[No. S068325. Aug. 23, 1999.]

BARRY ERLICH et al., Plaintiffs and Respondents, v.
JOHN MENEZES, Defendant, Cross-complainant and Appellant;
RON REBALDO et al., Cross-defendants and Respondents.

## COUNSEL

Edward J. Horowitz, Claudia Ribet; Knapp, Petersen & Clarke, Daniels, Baratta & Fine, Alan J. Carnegie, James L. Hsu and Stephen M. Harris for Defendant, Cross-complainant and Appellant.

Sonnenschein Nath & Rosenthal, Paul E. B. Glad, Paula M. Yost and Cheryl Dyer Berg for American Insurance Association and Crum & Forster Insurance Company as Amici Curiae on behalf of Defendant, Cross-complainant and Appellant.

Alister McAlister for National Association of Independent Insurers as Amicus Curiae on behalf of Defendant, Cross-complainant and Appellant.

Crosby, Heafey, Roach & May, Kathy M. Banke and Kay Long-Marin for Continental Metroplex as Amicus Curiae on behalf of Defendant, Cross-complainant and Appellant.

Fred J. Hiestand for the Association for California Tort Reform as Amicus Curiae on behalf of Defendant, Cross-complainant and Appellant.

Cox, Castle & Nicholson, Sandra C. Stewart and Debbie L. Freedman for the Building Industry Legal Defense Foundation and the California Building Industry Association as Amici Curiae on behalf of Defendant, Cross-complainant and Appellant.

Morgenstein & Jubelirer, James L. McGinnis and Laura E. Gasser for Centex Homes as Amicus Curiae on behalf of Defendant, Cross-complainant and Appellant.

Songstad, Randall & Ulich, Andrew K. Ulich and Thomas D. Deardorff II for Taylor Woodrow Homes, Inc., as Amicus Curiae on behalf of Defendant, Cross-complainant and Appellant.

Chapin Fleming McNitt Shea & Carter, Craig H. Bell and Keith A. Turner for Truck Insurance Exchange as Amicus Curiae on behalf of Defendant, Cross-complainant and Appellant.

John R. DeLoreto; Law Offices of Victor G. Zilinskas, Zilinskas & Jacobs, Victor G. Zilinskas and Michael L. Smith for Plaintiffs and Respondents.

Williams, Wester & Hall and Scott A. Williams as Amici Curiae on behalf of Plaintiffs and Respondents.

Kasdan, Simonds, McIntyre, Epstein & Martin and David G. Epstein for Consumer Attorneys of California as Amicus Curiae on behalf of Plaintiffs and Respondents.

Keppleman & Associates and Richard D. Keppleman for Cross-defendant and Respondent Ron Rebaldo.

Borton, Petrini & Conron, Craig R. McCollum and Gary A. Bixler for Cross-defendant and Respondent John Cravens Plastering, Inc.

## OPINION

**BROWN, J.**—We granted review in this case to determine whether emotional distress damages are recoverable for the negligent breach of a contract to construct a house. A jury awarded the homeowners the full cost necessary to repair their home as well as damages for emotional distress caused by the contractor's negligent performance. Since the contractor's negligence directly caused only economic injury and property damage, and breached no duty independent of the contract, we conclude the homeowners may not recover damages for emotional distress based upon breach of a contract to build a house.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Both parties agree with the facts as ascertained by the Court of Appeal. Barry and Sandra Erlich contracted with John Menezes, a licensed general contractor, to build a "dream house" on their ocean-view lot. The Erlichs moved into their house in December 1990. In February 1991, the rains came. "[T]he house leaked from every conceivable location. Walls were saturated in [an upstairs bedroom], two bedrooms downstairs, and the pool room. Nearly every window in the house leaked. The living room filled with three inches of standing water. In several locations water 'poured in in streams' from the ceilings and walls. The ceiling in the garage became so saturated . . . the plaster liquefied and fell in chunks to the floor."

Menezes's attempts to stop the leaks proved ineffectual. Caulking placed around the windows melted, " 'ran down [the] windows and stained them and ran across the driveway and ran down the house [until it] . . . looked like someone threw balloons with paint in them at the house.' " Despite several repair efforts, which included using sledgehammers and jackhammers to cut holes in the exterior walls and ceilings, application of new waterproofing materials on portions of the roof and exterior walls, and more caulk, the house continued to leak—from the windows, from the roofs, and water seeped between the floors. Fluorescent light fixtures in the garage filled with water and had to be removed.

"The Erlichs eventually had their home inspected by another general contractor and a structural engineer. In addition to confirming defects in the roof, exterior stucco, windows and waterproofing, the inspection revealed

serious errors in the construction of the home's structural components. None of the 20 shear, or load-bearing walls specified in the plans were properly installed. The three turrets on the roof were inadequately connected to the roof beams and, as a result, had begun to collapse. Other connections in the roof framing were also improperly constructed. Three decks were in danger of 'catastrophic collapse' because they had been finished with mortar and ceramic tile, rather than with the light-weight roofing material originally specified. Finally, the foundation of the main beam for the two-story living room was poured by digging a shallow hole, dumping in 'two sacks of dry concrete mix, putting some water in the hole and mixing it up with a shovel.' " This foundation, required to carry a load of 12,000 pounds, could only support about 2,000. The beam is settling and the surrounding concrete is cracking.

According to the Erlichs' expert, problems were major and pervasive, concerning everything "related to a window or waterproofing, everywhere that there was something related to framing," stucco, or the walking deck.

Both of the Erlichs testified that they suffered emotional distress as a result of the defective condition of the house and Menezes's invasive and unsuccessful repair attempts. Barry Erlich testified he felt "absolutely sick" and had to be "carted away in an ambulance" when he learned the full extent of the structural problems. He has a permanent heart condition, known as superventricular tachyarrhythmia, attributable, in part, to excessive stress. Although the condition can be controlled with medication, it has forced him to resign his positions as athletic director, department head and track coach.

Sandra Erlich feared the house would collapse in an earthquake and feared for her daughter's safety. Stickers were placed on her bedroom windows, and alarms and emergency lights installed so rescue crews would find her room first in an emergency.

Plaintiffs sought recovery on several theories, including breach of contract, fraud, negligent misrepresentation, and negligent construction. Both the breach of contract claim and the negligence claim alleged numerous construction defects.

Menezes prevailed on the fraud and negligent misrepresentation claims. The jury found he breached his contract with the Erlichs by negligently constructing their home and awarded $406,700 as the cost of repairs. Each spouse was awarded $50,000 for emotional distress, and Barry Erlich received an additional $50,000 for physical pain and suffering and $15,000 for lost earnings.

By a two-to-one majority, the Court of Appeal affirmed the judgment, including the emotional distress award. The majority noted the breach of a contractual duty may support an action in tort. The jury found Menezes was negligent. Since his negligence exposed the Erlichs to "intolerable living conditions and a constant, justifiable fear about the safety of their home," the majority decided the Erlichs were properly compensated for their emotional distress.

The dissent pointed out that no reported California case has upheld an award of emotional distress damages based upon simple breach of a contract to build a house. Since Menezes's negligence directly caused only economic injury and property damage, the Erlichs were not entitled to recover damages for their emotional distress.

We granted review to resolve the question.

## II. DISCUSSION

### A.

In an action for breach of contract, the measure of damages is "the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom" (Civ. Code, § 3300), provided the damages are "clearly ascertainable in both their nature and origin" (Civ. Code, § 3301). In an action not arising from contract, the measure of damages is "the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not" (Civ. Code, § 3333).

 "Contract damages are generally limited to those within the contemplation of the parties when the contract was entered into or at least reasonably foreseeable by them at that time; consequential damages beyond the expectation of the parties are not recoverable. [Citations.] This limitation on available damages serves to encourage contractual relations and commercial activity by enabling parties to estimate in advance the financial risks of their enterprise." (*Applied Equipment Corp.* v. *Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 515 [28 Cal.Rptr.2d 475, 869 P.2d 454] (*Applied Equipment*).) "In contrast, tort damages are awarded to [fully] compensate the victim for [all] injury suffered. [Citation.]" (*Id.* at p. 516.)

" '[T]he distinction between tort and contract is well grounded in common law, and divergent objectives underlie the remedies created in the two areas. Whereas contract actions are created to enforce the intentions of the parties

to the agreement, tort law is primarily designed to vindicate "social policy." [Citation.]' " (*Hunter* v. *Up-right, Inc.* (1993) 6 Cal.4th 1174, 1180 [26 Cal.Rptr.2d 8, 864 P.2d 88], quoting *Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654, 683 [254 Cal.Rptr. 211, 765 P.2d 373] (*Foley*).) While the purposes behind contract and tort law are distinct, the boundary line between them is not (*Freeman & Mills, Inc.* v. *Belcher Oil Co.* (1995) 11 Cal.4th 85, 106 [44 Cal.Rptr.2d 420, 900 P.2d 669] (conc. and dis. opn. of Mosk, J.) (*Freeman & Mills*)) and the distinction between the remedies for each is not " 'found ready made.' " (*Ibid.*, quoting Holmes, The Common Law (1881) p. 13.) These uncertain boundaries and the apparent breadth of the recovery available for tort actions create pressure to obliterate the distinction between contracts and torts—an expansion of tort law at the expense of contract principles which Grant Gilmore aptly dubbed "con*torts*." In this case we consider whether a negligent breach of a contract will support an award of damages for emotional distress—either as tort damages for negligence or as consequential or special contract damages.

## B.

In concluding emotional distress damages were properly awarded, the Court of Appeal correctly observed that "the same wrongful act may constitute both a breach of contract and an invasion of an interest protected by the law of torts." (*North American Chemical Co.* v. *Superior Court* (1997) 59 Cal.App.4th 764, 774 [69 Cal.Rptr.2d 466], citing 3 Witkin, Cal. Procedure (4th ed. 1996) Actions, § 139, pp. 203-204.) Here, the court permitted plaintiffs to recover both full repair costs as normal contract damages and emotional distress damages as a tort remedy.[1]

■ The Court of Appeal also noted that "[a] contractual obligation may create a legal duty and the breach of that duty may support an action in tort." This is true; however, conduct amounting to a breach of contract becomes tortious only when it also violates a duty independent of the contract arising from principles of tort law. (*Applied Equipment, supra,* 7 Cal.4th at p. 515.) " ' "An omission to perform a contract obligation is never a tort, unless that omission is also an omission of a legal duty." ' " (*Ibid.*, quoting *Jones* v. *Kelly* (1929) 208 Cal. 251, 255 [280 P. 942].)

Tort damages have been permitted in contract cases where a breach of duty directly causes physical injury (*Fuentes* v. *Perez* (1977) 66 Cal.App.3d

---

[1]At oral argument, plaintiff cited *Sloane* v. *Southern Cal. Ry. Co.* (1896) 111 Cal. 668 [44 P. 320], a case involving a passenger wrongly ejected from a train, for the proposition that emotional distress damages arising out of breach of contract have been permitted in California for many years. In fact, *Sloane* specifically recognized the distinction between contract and tort remedies and held plaintiff could either "bring an action simply for the breach of . . . contract, or she could sue . . . in tort" for the carrier's violation of the duty, as a common carrier, which it assumed upon entering into the contract. (*Id.* at p. 677.)

163, 168, fn. 2 [136 Cal.Rptr. 275]); for breach of the covenant of good faith and fair dealing in insurance contracts (*Crisci* v. *Security Ins. Co.* (1967) 66 Cal.2d 425, 433-434 [58 Cal.Rptr. 13, 426 P.2d 173]); for wrongful discharge in violation of fundamental public policy (*Tameny* v. *Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 175-176 [164 Cal.Rptr. 839, 610 P.2d 1330, 9 A.L.R.4th 314]); or where the contract was fraudulently induced. (*Las Palmas Associates* v. *Las Palmas Center Associates* (1991) 235 Cal.App.3d 1220, 1238-1239 [1 Cal.Rptr.2d 301].) In each of these cases, the duty that gives rise to tort liability is either completely independent of the contract or arises from conduct which is both intentional and intended to harm. (See, e.g., *Christensen* v. *Superior Court* (1991) 54 Cal.3d 868, 885-886 [2 Cal.Rptr.2d 79, 820 P.2d 181].)

Plaintiff's theory of tort recovery is that mental distress is a foreseeable consequence of negligent breaches of standard commercial contracts. However, foreseeability alone is not sufficient to create an independent tort duty. " 'Whether a defendant owes a duty of care is a question of law. Its existence depends upon the foreseeability of the risk and a weighing of policy considerations for and against imposition of liability.' [Citation.]" (*Burgess* v. *Superior Court* (1992) 2 Cal.4th 1064, 1072 [9 Cal.Rptr.2d 615, 831 P.2d 1197].) Because the consequences of a negligent act must be limited to avoid an intolerable burden on society (*Elden* v. *Sheldon* (1988) 46 Cal.3d 267, 274 [250 Cal.Rptr. 254, 758 P.2d 582]), the determination of duty "recognizes that policy considerations may dictate a cause of action should not be sanctioned no matter how foreseeable the risk." (*Ibid.*, fn. omitted.) "[T]here are clear judicial days on which a court can foresee forever and thus determine liability but none on which that foresight alone provides a socially and judicially acceptable limit on recovery of damages for [an] injury." (*Thing* v. *La Chusa* (1989) 48 Cal.3d 644, 668 [257 Cal.Rptr. 865, 771 P.2d 814].) In short, foreseeability is not synonymous with duty; nor is it a substitute.

The question thus remains: is the mere negligent breach of a contract sufficient? The answer is no. It may admittedly be difficult to categorize the cases, but to state the rule succinctly: "[C]ourts will generally enforce the breach of a contractual promise through contract law, except when the actions that constitute the breach violate a social policy that merits the imposition of tort remedies." (*Freeman & Mills, supra,* 11 Cal.4th at p. 107 (conc. and dis. opn. of Mosk, J.).) The familiar paradigm of tortious breach of contract in this state is the insurance contract. There we rely on the covenant of good faith and fair dealing, implied in every contract, to justify tort liability. (*Foley, supra,* 47 Cal.3d at pp. 689-690.) In holding that a tort action is available for breach of the covenant in an insurance contract,

we have "emphasized the 'special relationship' between insurer and insured, characterized by elements of public interest, adhesion, and fiduciary responsibility." (*Freeman & Mills, supra,* 11 Cal.4th at p. 91; see Louderback & Jurika, *Standards for Limiting the Tort of Bad Faith Breach of Contract* (1982) 16 U.S.F. L.Rev. 187, 227.)

The special relationship test, which has been criticized as illusory and not sufficiently precise (Putz & Klippen, *Commercial Bad Faith: Attorneys Fees—Not Tort Liability—Is the Remedy for "Stonewalling"* (1987) 21 U.S.F. L.Rev. 419, 478-479), has little relevance to the question before us. Menezes is in the business of building single-family homes. He is one among thousands of contractors who provide the same service, and the Erlichs could take their choice among any contractors willing to accept work in the area where their home would be constructed. Although they undoubtedly relied on his claimed expertise, they were in a position to view, inspect, and criticize his work, or to hire someone who could. Most significantly, there is no indication Menezes sought to frustrate the Erlichs' enjoyment of contracted-for benefits. He did build a house. His ineptitude led to numerous problems which he attempted to correct. And he remains ultimately responsible for reimbursing the cost of doing the job properly.

Moreover, since, as *Foley* noted, the insurance cases represented "a major departure from traditional principles of contract law," any claim for automatic extension of that exceptional approach whenever "certain hallmarks and similarities can be adduced in another contract setting" should be carefully considered. (*Foley, supra,* 47 Cal.3d at p. 690.)

Our previous decisions detail the reasons for denying tort recovery in contract breach cases: the different objectives underlying tort and contract breach; the importance of predictability in assuring commercial stability in contractual dealings; the potential for converting every contract breach into a tort, with accompanying punitive damage recovery, and the preference for legislative action in affording appropriate remedies. (*Freeman & Mills, supra,* 11 Cal.4th at p. 98, citing approvingly *Harris* v. *Atlantic Richfield Co.* (1993) 14 Cal.App.4th 70, 81-82 [17 Cal.Rptr.2d 649].) The same concerns support a cautious approach here. Restrictions on contract remedies serve to protect the " 'freedom to bargain over special risks and [to] promote contract formation by limiting liability to the value of the promise.' " (11 Cal.4th at p. 98, quoting *Harris, supra,* 14 Cal.App.4th at p. 77.)

Generally, outside the insurance context, "a tortious breach of contract . . . may be found when (1) the breach is accompanied by a traditional common law tort, such as fraud or conversion; (2) the means used to breach

the contract are tortious, involving deceit or undue coercion or; (3) one party intentionally breaches the contract intending or knowing that such a breach will cause severe, unmitigable harm in the form of mental anguish, personal hardship, or substantial consequential damages." (*Freeman & Mills, supra,* 11 Cal.4th at p. 105 (conc. and dis. opn. of Mosk, J.).) Focusing on intentional conduct gives substance to the proposition that a breach of contract is tortious only when some independent duty arising from tort law is violated. (*Applied Equipment, supra,* 7 Cal.4th at p. 515.) If every negligent breach of a contract gives rise to tort damages the limitation would be meaningless, as would the statutory distinction between tort and contract remedies.

In this case, the jury concluded Menezes did not act intentionally; nor was he guilty of fraud or misrepresentation. This is a claim for negligent breach of a contract, which is not sufficient to support tortious damages for violation of an independent tort duty.

It may ultimately be more useful, in attempting to develop a common law of tortious breach, to affirmatively identify specific practices utilized by contracting parties that merit the imposition of tort remedies (*Freeman & Mills, supra,* 11 Cal.4th at p. 107 (conc. and dis. opn. of Mosk, J.)), instead of comparing each new claim to a template for exceptions. In the interim, however, it is sufficient to note that more than mere negligence has been involved in each case where tort damages have been permitted. The benefits of broad compensation must be balanced against the burdens on commercial stability. "[C]ourts should be careful to apply tort remedies only when the conduct in question is so clear in its deviation from socially useful business practices that the effect of enforcing such tort duties will be . . . to aid rather than discourage commerce." (*Freeman & Mills, supra,* 11 Cal.4th at p. 109 (conc. and dis. opn. of Mosk, J.).)

## C.

Even assuming Menezes's negligence constituted a sufficient independent duty to the Erlichs, such a finding would not entitle them to emotional distress damages on these facts. "The fact that emotional distress damages may be awarded in some circumstances (see Rest.2d Torts, § 905, pp. 456-457) does not mean they are available in every case in which there is an independent cause of action founded upon negligence." (*Merenda* v. *Superior Court* (1992) 3 Cal.App.4th 1, 7 [4 Cal.Rptr.2d 87] (*Merenda*).) "No California case has allowed recovery for emotional distress arising solely out of property damage" (*Cooper* v. *Superior Court* (1984) 153 Cal.App.3d 1008, 1012 [200 Cal.Rptr. 746]); moreover, a preexisting contractual relationship, without more, will not support a recovery for mental suffering

where the defendant's tortious conduct has resulted only in economic injury to the plaintiff. (*Smith* v. *Superior Court* (1992) 10 Cal.App.4th 1033, 1040, fn. 1 [13 Cal.Rptr.2d 133]; *Mercado* v. *Leong* (1996) 43 Cal.App.4th 317, 324 [50 Cal.Rptr.2d 569] [emotional distress damages are unlikely when the interests affected are merely economic]; *Camenisch* v. *Superior Court* (1996) 44 Cal.App.4th 1689, 1691 [52 Cal.Rptr.2d 450] (*Camenisch*) [emotional distress damages are not recoverable when attorney malpractice leads only to economic loss].)

Although the Court of Appeal, plaintiffs, and their amici curiae rely substantially on *Potter* v. *Firestone Tire & Rubber Co.* (1993) 6 Cal.4th 965 [25 Cal.Rptr.2d 550, 863 P.2d 795] (*Potter*), that case does not assist our inquiry. *Potter*, a toxic tort case, is readily distinguishable. First, the analysis there was narrowly circumscribed by the issue presented: "whether . . . emotional distress engendered by the fear of developing cancer in the future as a result of a toxic exposure is a recoverable item of damages in a negligence action." (*Id.* at p. 981.) Thus, the language of *Potter* cannot be read in support of some larger proposition affording emotional distress damages for any other type of fear of future harm in actions involving negligent breach of contract.

Second, the water supply of the plaintiffs in *Potter* had already been contaminated. The prolonged exposure could not be undone. In contrast, the Erlichs could have avoided the threatened injury by moving out of the house until necessary repairs had been completed. If they had, relocation expenses would have been part of their damages. In any event, the general measure of damages where injury to property is capable of being repaired is the reasonable cost of repair together with the value of lost use during the period of injury. (6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 1462, pp. 934-935.)

In short, *Potter* permitted recovery, within stringent limits, for emotional distress resulting from a personal injury directly caused by the defendant's tortious conduct. The Erlichs seek recovery for emotional distress engendered by an injury to their property.

To the extent *Potter* is relevant here, it reiterates that "unless the defendant has assumed a duty to plaintiff in which the emotional condition of the plaintiff is an object, recovery is available only if the emotional distress arises out of the defendant's breach of some other legal duty and the emotional distress is proximately caused by [breach of the independent duty]. Even then, with rare exceptions, a breach of the duty must threaten physical injury, not simply damage to property or financial interests. [Citations.]" (*Potter*, *supra*, 6 Cal.4th at p. 985.) Although the Erlichs feared

physical injury, Menezes's negligent breach of contract resulted in only damage to their property, and they could have avoided any threat of harm.

The question was thoroughly explored in *Merenda, supra,* 3 Cal.App.4th 1, a legal malpractice action in which the plaintiff sought damages for the severe emotional distress she suffered when her attorney's negligence caused the loss of expected damages from her claim for sexual assault and battery. "It is true that the 'transaction,' a contract for legal services, was intended to affect the plaintiff. However, the foreseeability of serious emotional harm to the client and the degree of certainty that the client suffered such injury by loss of an economic claim are tenuous. Litigation is an inherently uncertain vehicle for advancing one's economic interests. The expectation of a recovery is rarely so certain that a litigant would be justified in resting her peace of mind upon the assurance of victory." (*Id.* at p. 10.)

In *Camenisch, supra,* 44 Cal.App.4th 1689, the plaintiff sought emotional distress damages because the lawyer's negligent estate planning advice thwarted his tax avoidance goals. The complaint alleged the attorney had been hired " 'for the express purpose of providing for [the plaintiffs' family] and obtaining repose regarding their financial security.' " (*Id.* at p. 1692.) The trial court overruled the attorney's demurrer. The Court of Appeal rejected the claim for emotional distress damages. Acknowledging that *Merenda* dealt with malpractice related to litigation, the court nevertheless found its reasoning dispositive. "Public policy reasons do not support a different result when the alleged malpractice is committed in a tax advice context, even if the tax advice is part of an estate plan. [¶] As in a litigation context, the client's primary protected interest is economic in a tax planning situation. The prospect of paying taxes is generally considered distressing, and the prospect of paying a greater levy than necessary is even more disquieting. However, the emotional upset derives from an inherently economic concern." (*Id.* at p. 1697.)

In *Lubner v. City of Los Angeles* (1996) 45 Cal.App.4th 525 [53 Cal.Rptr.2d 24], two artists lost a substantial portion of their life's work when a city trash truck, which had been parked on a hilltop, rolled down and crashed into their home, damaging the house, two cars, and much of their artwork. The Lubners filed a negligence action and sought damages for their emotional distress. Recognizing that the artwork may have been extremely important to the Lubners, the court nevertheless found they were not entitled to recover for emotional distress caused by injury to property. (*Id.* at p. 532.) The court based its ruling primarily on the absence of a preexisting relationship between the parties, but separately considered whether the defendant breached a duty of care to the plaintiffs. Noting that the moral blame on the

defendant was only that which attends ordinary negligence and nothing in the record indicated bad faith or reckless indifference to the Lubners' emotional tranquillity, the court concluded liability for negligent infliction of emotional distress was unwarranted. (*Id.* at p. 534.)

Public policy supports a similar limit where the negligence concerns the construction of a home. In *Blagrove* v. *JB Mechanical, Inc.* (Wyo. 1997) 934 P.2d 1273 (*Blagrove*), the homeowners sued a plumbing contractor to recover damages for mental anguish caused when flooding from a faulty plumbing connection damaged their home and destroyed personal possessions. The Wyoming Supreme Court held that, absent physical injury, emotional distress damages can be recovered only in limited circumstances involving intentional torts, constitutional violations, and the breach of the covenant of good faith and fair dealing in insurance contracts, and concluded a contrary rule would be poor public policy.

"In deciding whether the plaintiff's interests are entitled to legal protection against the defendant's conduct, we must balance the interest of the injured parties against the view that a negligent act should have some end to its legal consequences. . . . We are persuaded that the concerns which have acted to prevent recovery for emotional distress when property is damaged remain relevant and weigh against permitting recovery. While we do not doubt that the Blagroves were justifiably and seriously distressed over the damage to [their home], adopting a rule allowing trial on the issue and recovery if proved would result in unacceptable burdens for both the judicial system and defendants. We therefore hold that emotional distress damages in connection with property damages are not compensable." (*Blagrove, supra,* 934 P.2d at pp. 1276-1277; see also *Caradonna* v. *Thorious* (1969) 17 Mich.App. 41 [169 N.W.2d 179, 182]; *Jankowski* v. *Mazzotta* (1967) 7 Mich.App. 483 [152 N.W.2d 49] [no mental anguish remedy available for ineptly constructed home].)

Here, the breach—the negligent construction of the Erlichs' house—did not cause physical injury. No one was hit by a falling beam. Although the Erlichs state they feared the house was structurally unsafe and might collapse in an earthquake, they lived in it for five years. The only physical injury alleged is Barry Erlich's heart disease, which flowed from the emotional distress and not directly from the negligent construction.

The Erlichs may have hoped to build their dream home and live happily ever after, but there is a reason that tag line belongs only in fairy tales. Building a house may turn out to be a stress-free project; it is much more likely to be the stuff of urban legends—the cause of bankruptcy, marital

dissolution, hypertension and fleeting fantasies ranging from homicide to suicide. As Justice Yegan noted below, "No reasonable homeowner can embark on a building project with certainty that the project will be completed to perfection. Indeed, errors are so likely to occur that few if any homeowners would be justified in resting their peace of mind on [its] timely or correct completion . . . ." The connection between the service sought and the aggravation and distress resulting from incompetence may be somewhat less tenuous than in a malpractice case, but the emotional suffering still derives from an inherently economic concern.

### D.

 Having concluded tort damages are not available, we finally consider whether damages for emotional distress should be included as consequential or special damages in a contract claim. "Contract damages are generally limited to those within the contemplation of the parties when the contract was entered into or at least reasonably foreseeable by them at the time; consequential damages beyond the expectations of the parties are not recoverable. [Citations.] This limitation on available damages serves to encourage contractual relations and commercial activity by enabling parties to estimate in advance the financial risks of their enterprise." (*Applied Equipment, supra,* 7 Cal.4th at p. 515.)

" '[W]hen two parties make a contract, they agree upon the rules and regulations which will govern their relationship; the risks inherent in the agreement and the likelihood of its breach. The parties to the contract in essence create a mini-universe for themselves, in which each voluntarily chooses his contracting partner, each trusts the other's willingness to keep his word and honor his commitments, and in which they define their respective obligations, rewards and risks. Under such a scenario, it is appropriate to enforce only such obligations as each party voluntarily assumed, and to give him only such benefits as he expected to receive; this is the function of contract law.' " (*Applied Equipment, supra,* 7 Cal.4th at p. 517.)

 Accordingly, damages for mental suffering and emotional distress are generally not recoverable in an action for breach of an ordinary commercial contract in California. (*Kwan* v. *Mercedes-Benz of North America, Inc.* (1994) 23 Cal.App.4th 174, 188 [28 Cal.Rptr.2d 371] (*Kwan*); *Sawyer* v. *Bank of America* (1978) 83 Cal.App.3d 135, 139 [145 Cal.Rptr. 623].) "Recovery for emotional disturbance will be excluded unless the breach also caused bodily harm or the contract or the breach is of such a kind that serious emotional disturbance was a particularly likely result." (Rest.2d

Contracts, § 353.) The Restatement specifically notes the breach of a contract to build a home is not "particularly likely" to result in "serious emotional disturbance." (*Ibid.*)

Cases permitting recovery for emotional distress typically involve mental anguish stemming from more personal undertakings the traumatic results of which were unavoidable. (See, e.g., *Burgess* v. *Superior Court, supra*, 2 Cal.4th 1064 [infant injured during childbirth]; *Molien* v. *Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916 [167 Cal.Rptr. 831, 616 P.2d 813, 16 A.L.R.4th 518] [misdiagnosed venereal disease and subsequent failure of marriage]; *Kately* v. *Wilkinson* (1983) 148 Cal.App.3d 576 [195 Cal.Rptr. 902] [fatal waterskiing accident]; *Chelini* v. *Nieri* (1948) 32 Cal.2d 480 [196 P.2d 915] [failure to adequately preserve a corpse].) Thus, when the express object of the contract is the mental and emotional well-being of one of the contracting parties, the breach of the contract may give rise to damages for mental suffering or emotional distress. (See *Wynn* v. *Monterey Club* (1980) 111 Cal.App.3d 789, 799-801 [168 Cal.Rptr. 878] [agreement of two gambling clubs to exclude husband's gambling-addicted wife from clubs and not to cash her checks]; *Ross* v. *Forest Lawn Memorial Park* (1984) 153 Cal.App.3d 988, 992-996 [203 Cal.Rptr. 468, 42 A.L.R.4th 1049] [cemetery's agreement to keep burial service private and to protect grave from vandalism]; *Windeler* v. *Scheers Jewelers* (1970) 8 Cal.App.3d 844, 851-852 [88 Cal.Rptr. 39] [bailment for heirloom jewelry where jewelry's great sentimental value was made known to bailee].)

Cases from other jurisdictions have formulated a similar rule, barring recovery of emotional distress damages for breach of contract except in cases involving contracts in which emotional concerns are the essence of the contract. (See, e.g., *Hancock* v. *Northcutt* (Alaska 1991) 808 P.2d 251, 258 ["contracts pertaining to one's dwelling are not among those contracts which, if breached, are particularly likely to result in serious emotional disturbance"; typical damages for breach of house construction contracts can appropriately be calculated in terms of monetary loss]; *McMeakin* v. *Roofing & Sheet Metal Supply* (1990) 1990 Okla.Civ.App. 101 [807 P.2d 288] [affirming order granting summary judgment in favor of defendant roofing company after it negligently stacked too many brick tiles on roof, causing roof to collapse and completely destroy home, leading to plaintiff's heart attack one month later]; *Day* v. *Montana Power Co.* (1990) 242 Mont. 195 [789 P.2d 1224] [owner of restaurant that was destroyed in gas explosion allegedly caused by negligence of utility company employee not entitled to recover damages for emotional distress]; *Creger* v. *Robertson* (La.Ct.App. 1989) 542 So.2d 1090 [reversing award for emotional distress damages caused by foul odor emanating from a faulty foundation, preventing plaintiff from entertaining guests in her residence]; *Groh* v. *Broadland Builders, Inc.*

(1982) 120 Mich.App. 214 [327 N.W.2d 443] [reversing order denying motion to strike allegations of mental anguish in case involving malfunctioning septic tank system, and noting adequacy of monetary damages to compensate for pecuniary loss of "having to do the job over," as distinguished from cases allowing recovery because situation could never be adequately corrected].)

Plaintiffs argue strenuously that a broader notion of damages is appropriate when the contract is for the construction of a home. Amici curiae urge us to permit emotional distress damages in cases of negligent construction of a personal residence when the negligent construction causes gross interference with the normal use and habitability of the residence.

Such a rule would make the financial risks of construction agreements difficult to predict. Contract damages must be clearly ascertainable in both nature and origin. (Civ. Code, § 3301.) A contracting party cannot be required to assume limitless responsibility for all consequences of a breach and must be advised of any special harm that might result in order to determine whether or not to accept the risk of contracting. (1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 815, p. 733.)

Moreover, adding an emotional distress component to recovery for construction defects could increase the already prohibitively high cost of housing in California, affect the availability of insurance for builders, and greatly diminish the supply of affordable housing. The potential for such broad-ranging economic consequences—costs likely to be paid by the public generally—means the task of fashioning appropriate limits on the availability of emotional distress claims should be left to the Legislature. (See Tex. Prop. Code Ann. § 27.001 et seq. (1999); Haw. Rev. Stat. § 663-8.9 (1998).)

Permitting damages for emotional distress on the theory that certain contracts carry a lot of emotional freight provides no useful guidance. Courts have carved out a narrow range of exceptions to the general rule of exclusion where emotional tranquillity is the contract's essence. Refusal to broaden the bases for recovery reflects a fundamental policy choice. A rule which focuses not on the risks contracting parties voluntarily assume but on one party's reaction to inadequate performance, cannot provide any principled limit on liability.

The discussion in *Kwan*, a case dealing with the breach of a sales contract for the purchase of a car, is instructive. "[A] contract for [the] sale of an automobile is not essentially tied to the buyer's mental or emotional well-being. Personal as the choice of a car may be, the central reason for buying one is usually transportation. . . . [¶] In spite of America's much-discussed

'love affair with the automobile,' disruption of an owner's relationship with his or her car is not, in the normal case, comparable to the loss or mistreatment of a family member's remains [citation], an invasion of one's privacy [citation], or the loss of one's spouse to a gambling addiction [citation]. In the latter situations, the contract exists primarily to further or protect emotional interests; the direct and foreseeable injuries resulting from a breach are also primarily emotional. In contrast, the undeniable aggravation, irritation and anxiety that may result from [the] breach of an automobile warranty are secondary effects deriving from the decreased usefulness of the car and the frequently frustrating process of having an automobile repaired. While [the] purchase of an automobile may sometimes lead to severe emotional distress, such a result is not ordinarily foreseeable from the nature of the contract." (*Kwan*, *supra*, 23 Cal.App.4th at p. 190.)

Most other jurisdictions have reached the same conclusion. (See *Sanders* v. *Zeagler* (La. 1997) 686 So.2d 819, 822-823 [principal object of a contract for the construction of a house was to obtain a place to live and emotional distress damages were not recoverable]; *Hancock* v. *Northcutt*, *supra*, 808 P.2d at pp. 258-259 [no recovery for emotional distress as a result of defective construction; typical damages for breach of house construction contracts can appropriately be calculated in terms of monetary loss]; *City of Tyler* v. *Likes* (Tex. 1997) 962 S.W.2d 489, 497 [mental anguish based solely on property damage is not compensable as a matter of law].)

We agree. The available damages for defective construction are limited to the cost of repairing the home, including lost use or relocation expenses, or the diminution in value. (*Orndorff* v. *Christiana Community Builders* (1990) 217 Cal.App.3d 683 [266 Cal.Rptr. 193].) The Erlichs received more than $400,000 in traditional contract damages to correct the defects in their home. While their distress was undoubtedly real and serious, we conclude the balance of policy considerations—the potential for significant increases in liability in amounts disproportionate to culpability, the court's inability to formulate appropriate limits on the availability of claims, and the magnitude of the impact on stability and predictability in commercial affairs—counsel against expanding contract damages to include mental distress claims in negligent construction cases.

### DISPOSITION

The judgment of the Court of Appeal is reversed and the matter is remanded for further proceedings consistent with this opinion.

George, C. J., Kennard, J., Baxter, J., and Chin, J., concurred.

**WERDEGAR, J.,** Concurring and Dissenting.—I concur in the majority opinion insofar as it holds that a plaintiff may not recover damages for emotional distress based on a defendant's negligent breach of a contract to build a house when the defendant has breached no duty independent of the contract. Although I read the record differently as to whether these plaintiffs did, in fact, present an independent claim for negligence, in view of the majority's conclusion that plaintiffs did not present such a claim (see maj. opn., *ante*, at pp. 548, 554), the discussion in part C of the majority opinion (*id.*, at pp. 554-558) is unnecessary. I therefore express no opinion on the circumstances under which a tort plaintiff may recover damages for emotional distress.

Mosk, J., concurred.