Filed 12/23/15  Grandison v. Cox Reps CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| LANCE GRANDISON,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>COX REPS,<br><br>    Defendant and Respondent. | B255805<br><br>(Los Angeles County<br>Super. Ct. No. BC500360) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Joseph R. Kalin, Judge.  Affirmed.

Lance Grandison, in pro. per., for Plaintiff and Appellant.

Brown Wegner McNamara, Matthew K. Wegner and Valerie L. McNamara for Defendant and Respondent.

————————

**INTRODUCTION**

Plaintiff and appellant Lance Grandison appeals a judgment following a grant of summary judgment in favor of defendant and respondent Cox Reps. Grandison sued Cox Reps for "breach of a contract and negligence" and for fraud, based on allegations that Cox Reps agreed to sell him airtime on KCAL-TV for his show, Video Hot Mix. The trial court found, among other things, that Grandison failed to join indispensable parties CBS and KCAL. We agree that there is no triable issue of material fact as to any of Grandison's causes of action, and affirm the judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

**I.      Factual background.**

In 2002, Grandison produced Video Hot Mix, a program showcasing music in the rap and hip-hop industries in the form of "mixing" music videos, "D.J. style." A version of the show aired on KTLA between 2002 and 2003, but, lacking advertiser interest, production ceased. In 2006, Spike TV paid production costs for a pilot episode of Video Hot Mix but declined to air it.

In 2011, Grandison tried to get airtime for the show from Channel 5 but none was available. He instead was referred to Cox Reps, an "intermediary between television stations that sell air time" and people who want their shows to run on the air. Carolina Guasch was an account executive for Cox Reps.

Guasch, Grandison, and Lionel Grandison (plaintiff's brother),[1] met on August 3, 2011 to discuss buying airtime on KCAL. Guasch viewed an episode of Video Hot Mix and answered questions about securing airtime with CBS/KCAL.[2] Guasch gave Grandison an "award notification report," which showed air dates for the show and the rate for each slot of airtime. The report listed "KCAL-TV-Los Angeles" as "station"; Grandison as "Buyer"; and Guasch as "salesperson." Tapes were to be sent to KCAL,

---

[1]      Lionel was in charge of production.

[2]      CBS owns and operates KCAL-TV.

2

and checks were to be sent to CBS. Under "policies and procedures" the report stated that "[s]tation maintain all orders will be held to a firm four week cancellation[.] [¶] All changes, cancels, add ect., must be handled by Cox Reps LA [¶] All payments are to be received two weeks prior to air date [¶] All tapes must have closed captioning[.]" The report then listed an airtime schedule, beginning October 1, 2011, and continuing every seven days thereafter, with the last airtime on December 24, 2011. The rate for each airtime slot was $1,300.

The day after the meeting, Grandison told Guasch that he "look[ed] forward to doing business with K-CAL 9. I am meeting my client Friday 8/5/11 and I was hoping to have confirmation of airtime and secure it with payment. Please send paperwork . . . ." Guasch responded that "[w]e'll need to make sure that the station approves the content. I looked at the promos and it's hard to say." Grandison understood he had to send episodes directly to KCAL for approval: "I mean, I'm not dumb. They're not going to air a show that nobody's viewed." He understood he was "buying time from KCAL 9."

On Grandison's behalf, his father, Samir Muqaddin, contacted CBS and negotiated an agency discount rate of $1,105 per slot of airtime, $200 less than the $1,300 rate on the report Guasch gave to Grandison. Muqaddin also understood he had to "make a bid for airtime" with CBS, and CBS "had to accept my price."

Grandison and Muqaddin spoke to Jerome Ventura at CBS regarding payments. Payments for the two airtime slots were made by XL Entertainment,[3] on behalf of Grandison, directly to CBS. No payments were made to Cox Reps. Neither Cox Reps nor CBS and KCAL paid any production costs for Video Hot Mix. Grandison was never told that Cox Reps or KCAL assumed responsibility for production costs.

The first episode of Video Hot Mix aired on October 1, 2011. A second aired on October 8, 2011. After the second episode aired, CBS expressed concern about the show. Leslie Keane, CBS's director of research and programming, asked Guasch to clarify

---

[3]     XL Entertainment, which Lionel ran, "helps" Grandison produce shows.

3

whether Grandison had rights to air the music and videos in Video Hot Mix. Guasch conveyed CBS's concerns to Muqaddin. After talking to Muqaddin, Guasch e-mailed him on October 11, 2011 and told him that Keane needed an e-mail from him "explaining exactly what you told me." That same day, Muqaddin forwarded an agreement with record companies concerning use of videos, and Guasch sent it to Keane. Keane pointed out that the agreement did not address music licenses.

On October 18, 2011, Kerry O'Farrell, the national sales manager for KCBS-TV/KCAL-TV told Guasch, "We cannot air this show. The documents provided did not assure legal that they have the music rights. [¶] Please cancel remaining shows." KCAL stopped airing Video Hot Mix.

When Guasch told Grandison no more episodes would be aired, he proposed airing a documentary style version of the show without music. On November 4, 2011, he delivered a new version of Video Hot Mix to CBS. Keane expressed concerns about this version as well: "We have a couple of questions about the episode we received: [¶] 1. Did the production company have the rights to be filming at the LA Soul Festival and did the people appearing in the show know they were going to be appearing on a television production? [¶] 2. We need to be sent a list disclosing anything in the show where promotional consideration was given in return for goods and/or services – i.e., was The Game Sports Bar given promotion in the show in return for being the filming location? [¶] Once we have these items it appears that we will be able to air Video Hot Mix with the following conditions: [¶] We will need a weekly written disclosure of all promotional consideration in the show sent to the station (it can be emailed directly to me) by 2pm each Wednesday prior to the show's airing on Saturday. [¶] The show credits must clearly note any promotional consideration in the credits – i.e. 'Promotional consideration provided by . . .' [¶] Each week's show will have to go through an approval process – We will need each week's show by 2pm each Wednesday prior to its Saturday airing as we will have to review and approve each episode. [¶] Should the deadlines not be met, there is no guarantee that particular week's program can air."

4

Grandison did not comply with these terms. The revised show did not air. After KCAL decided not to run Video Hot Mix, Grandison did not try to get it aired on another station.

## II.    Procedural background.

On February 1, 2013, Grandison sued Cox Reps for breach of contract, negligence, and for fraud. Grandison alleged that he and Cox Reps entered into an oral and written agreement whereby Cox Reps agreed to sell to him "13 weeks of paid programming television airtime beginning 10/1/11 and ending 12/24/11" on KCAL 9. The "essential terms" were that Cox Reps guaranteed the programming, "save emergencies," and that there would be a four-week cancellation policy. Grandison asked for $257,324 in damages for breach of contract and for negligence and "general and compensatory" damages in the amount of $175,000.

Cox Reps moved for summary judgment on the ground that if there was a contract, it was between Grandison and CBS and KCAL, who were therefore indispensable parties. Cox Reps also disputed that there was any contract, because any contract terms were uncertain and an essential element of the deal was that CBS or KCAL had to approve Video Hot Mix's content. Also, Grandison could not prove he was damaged by Cox Reps's conduct, given that all Grandison expected for his money was airtime, which he received.

In support of the motion, Cox Reps submitted Guasch's declaration. When Guasch first met with Grandison, she told him the station had to approve the show's content and decide whether it could be aired. Each episode had to be close-captioned. Tapes had to be sent directly to KCAL, payments to CBS. She also told Grandison he could get a discounted airtime rate if airtime was purchased through an agency. Guasch explained that if Grandison cancelled the programming without giving four weeks' notice, he could incur fees or be prohibited from doing business with CBS. Neither Grandison nor his brother asked if the cancellation policy was reciprocal. To illustrate an airtime schedule, Guasch gave Grandison the award notification report. She "never

5

intended for this document to bind Cox Reps, CBS or KCAL to the estimated dates or prices in any way, nor is such a document intended to act as a contract at all—it was offered solely for Plaintiff's benefit as an estimated schedule of airtime and the projected associated cost." However, she did tell Grandison he would be able to secure the estimated airtime if KCAL approved the show's content.

Grandison opposed the motion, maintaining that the award notification report constituted a written contract. He also argued that Cox Reps acted negligently by failing to pass information to him from CBS and acted fraudulently by inducing Grandison to enter the contract by "misrepresenting the companies position on guaranteed airtime." As a result of the cancellation of Video Hot Mix, Grandison's reputation was damaged and he lost the opportunity to make $175,000 from advertising sales. In his declaration, Grandison said that Guasch described the award notification report as "the official contract." She also told him the cancellation policy went both ways, and when Grandison asked, " 'Is this a guarantee[?]' " she told him, yes, the show would be interrupted only for emergency purposes.

Grandison also objected to Guasch's declaration on the ground, among others, it failed to comply with Code of Civil Procedure section 2015.5.[4]

In addition to his declaration in support of his opposition, Grandison submitted exhibits (e.g., invoices, deposition transcripts, and e-mails), but they were not attached to a declaration and were otherwise unidentified. Cox Reps objected to Grandison's evidence on the grounds it was not authenticated and that the deposition transcript excerpts failed to comply with California Rules of Court, rule 3.1116(a).

The trial court granted summary judgment in Cox Reps's favor. The court found that Grandison failed to add indispensable parties CBS and KCAL; could not prove the existence of an enforceable contract with Cox Reps; could not establish causation or damages; failed to mitigate damages; and the fraud and negligence causes of action were

---

[4] All further undesignated statutory references are to the Code of Civil Procedure.

6

barred as a matter of law. The court overruled Grandison's evidentiary objections and sustained all of Cox Reps's objections, including ones to Grandison's declaration, exhibits, and deposition transcripts.[5]

Judgment was entered on February 26, 2014.

## CONTENTIONS

Grandison contends that the summary judgment was improperly granted because I. the trial court should have excluded Guasch's declaration; II. there are triable issues of material fact as to all causes of action; and III. the attorney fees award was excessive.

## DISCUSSION

## I. The trial court did not abuse its discretion by overruling objections to Guasch's declaration.

Grandison contends that his objections under section 2015.5 to Guasch's declaration should have been sustained. We find that the court did not abuse its discretion by overruling the objections. (*Miranda v. Bomel Construction Co., Inc.* (2010) 187 Cal.App.4th 1326, 1335 [in summary judgment proceedings, the weight of authority holds that appellate courts review evidentiary rulings for an abuse of discretion].)

Section 2015.5 requires a declaration to recite "that it is certified or declared by [the affiant] to be true under penalty of perjury, is subscribed by him or her, and (1), if executed within this state, states the date and place of execution, or (2), if executed at any place, within or without this state, states the date of execution and that it is so certified or declared under the laws of the State of California." Guasch's declaration states: "I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. [¶] Executed this October 18, 2013, at 9.30 A, California." Guasch printed her name.

---

[5] Although Grandison appears to suggest we can consider evidence to which objections were sustained, he does not address any specific objections and why the trial court abused its discretion in sustaining them. His failure to do so forfeits this issue on appeal. (*Roe v. McDonald's Corp.* (2005) 129 Cal.App.4th 1107, 1114; *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785.)

7

Guasch's declaration complied with section 2015.5. First, the declaration was under penalty of perjury. Second, it was subscribed by Guasch. Although Guasch printed her name rather than signing it in cursive, Grandison cites no authority finding that printing one's name is an improper subscription. "Contentions on appeal are waived by a party who fails to support them with reasoned argument and citations to authority." (*Sporn v. Home Depot USA, Inc.* (2005) 126 Cal.App.4th 1294, 1303; *Berger v. California Ins. Guarantee Assn.* (2005) 128 Cal.App.4th 989, 1007; *Badie v. Bank of America, supra*, 67 Cal.App.4th at pp. 784-785.) Third, the declaration states the date of execution, October 18, 2013. Finally, it is declared "under the laws of the State of California."

Notwithstanding the declaration's compliance with section 2015.5, Grandison suggests the declaration was fabricated, because Guasch printed her name and because the declaration was signed the same day the motion was filed. These objections were not properly raised in or considered by the trial court and therefore they were forfeited. (§ 437c, subds. (b)(5), (c), (d).)[6]

## II. There is no triable issue of material fact as to any of Grandison's causes of action.

### A. *The standard of review.*

We review a grant of summary judgment de novo. (*Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1348.) Summary judgment is properly granted when there are no triable issues of material fact and the moving party is entitled to judgment as a matter of law. (§ 437c, subd. (c).) A moving defendant meets its burden by showing one or more essential elements of the cause of action cannot be established or there is a complete defense thereto. (*Id.*, subd. (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849.) Once the moving party meets its initial burden, the burden shifts to the opponent to show a triable issue of one or more material facts exists as to that cause of

---

[6] Grandison raised these objections in a motion for reconsideration, which was denied on jurisdictional grounds. He does not appeal the order denying that motion.

8

action or defense. (§ 437c, subd. (p); *Aguilar,* at p. 849.) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar,* at p. 850.) "In determining whether the papers show that there is no triable issue as to any material fact the court shall consider all of the evidence set forth in the papers, except that to which objections have been made and sustained by the court . . . ." (§ 437c, subd. (c); see also *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.)

      B.     *The breach of contract cause of action.*

      Grandison contends that Cox Reps agreed to sell him 13 weeks of airtime for Video Hot Mix and agreed that the show could be cancelled only after four weeks' notice. We conclude that, if a contract existed, CBS and/or KCAL were indispensable parties to a cause of action for breach of it. Grandison, however, failed to raise a triable issue of material fact on that issue. Therefore, the breach of contract cause of action was properly adjudicated.

      A party may be indispensable to an action if "(1) in his absence complete relief cannot be accorded among those already parties or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party." (§ 389, subd. (a); see also *Save Our Bay, Inc. v. San Diego Unified Port Dist.* (1996) 42 Cal.App.4th 686, 692 [" 'Where the plaintiff seeks some type of affirmative relief which, if granted, would injure or affect the interest of a third person not joined, that third person is an indispensable party.' "].)

      " 'Ordinarily where the rights involved in litigation arise upon a contract, courts refuse to adjudicate the rights of some of the parties to the contract if the others are not

9

before it.' " [Citation.]" (*Deltakeeper v. Oakdale Irrigation Dist.* (2001) 94 Cal.App.4th 1092, 1106.)  Here, Cox Reps submitted evidence that CBS and/or KCAL were indispensable parties to any contract to sell airtime to Grandison.  Grandison submitted evidence in opposition, but Cox Reps's objections to that evidence were sustained.  (See generally § 473c, subds. (c) [in determining whether a triable issue of material fact exists as to any material fact, the court shall consider all evidence except that to which objections have been made and sustained]; (d) [all opposing declarations shall set forth admissible evidence].)  Grandison does not challenge those objections on appeal.  Cox Reps's evidence was therefore unopposed.  (See *Guz v. Bechtel National, Inc., supra,* 24 Cal.4th at p. 334.)

Cox Reps's undisputed evidence established that complete relief cannot be accorded in the absence of CBS and/or KCAL.  (§ 389.)  It was undisputed that Cox Reps acted as an "intermediary" between television stations that sell airtime and people who want their shows aired.[7]  The "award notification report" named Guasch as "salesperson" and KCAL-TV as "station."  Grandison did not dispute he was buying airtime *from KCAL.*  Grandison did not dispute that negotiations concerning the airtime rate were with CBS and that payments for airtime had to be sent to CBS.  The invoices for airtime had CBS logo on them and confirmed that airtime was being bought from CBS:  "*CBS Television Stations Standard Terms and Conditions for advertising shall apply.*  [¶] NONDISCRIMATION POLICY:  CBS Television Stations and its Stations do not discriminate in advertising contracts on the basis of race or ethnicity, and will not accept any advertising which is intended to discriminate on the basis of race or ethnicity.  Advertiser represents and warrants that it is not *purchasing time from CBS Television* Stations or its Stations that is intended to discriminate on the basis of race or ethnicity."  (Italics added.)  Grandison also did not dispute that he had to, and did, send Video Hot

---

[7]     In his responsive separate statement, Grandison did not dispute this fact.  Instead, he objected to it and asked, "Is Guasch Stating opinion or fact.  The website says they are the national sales firm for CBS."

10

Mix episodes to KCAL for approval and that CBS and KCAL had to approve Video Hot Mix before it aired.[8]

These facts establish that, assuming the existence of a contract to sell airtime, CBS and/or KCAL were indispensable parties in whose absence complete relief could not be accorded. Because Grandison failed to raise a triable issue of material fact on this issue, the breach of contract cause of action was properly adjudicated.

C.     *The negligence cause of action.*

It is unclear how Grandison's "negligence" cause of action differs from or is separate from his one for breach of contract. In fact, Grandison did not allege a separate cause of action for negligence. Rather, his first cause of action is for "breach of contract and NEGLIGENCE," and therefore the same facts are alleged to support both causes of action.

In any event, to the extent Grandison alleged a negligence cause of action, it too was properly adjudicated. A " 'contractual obligation may create a legal duty and the breach of that duty may support an action in tort.' This is true; however, conduct amounting to a breach of contract becomes tortious only when it also violates a duty independent of the contract arising from principles of tort law. [Citation.] ' " 'An omission to perform a contract obligation is never a tort, unless that omission is also an omission of a legal duty.' " ' [Citations.]" (*Erlich v. Menezes* (1999) 21 Cal.4th 543, 551.) Here, the only facts alleged were ones concerning breach of contract. It is therefore unclear what legal duty of care Cox Reps owed Grandison. (See generally *Ladd v. County of San Mateo* (1996) 12 Cal.4th 913, 917-918 [elements of a negligence cause of action are a legal duty of care, breach of duty, and the breach proximately caused resulting injury].)

Grandison, however, does state in his opening brief that Cox Reps failed to "pass[] information on a timely bas[is]." To the extent Grandison's argument is that Cox Reps

---

**8**     Grandison argued that this approval was limited to closed captioning and audio and visual issues.

11

had a legal duty of care to pass information to him, he fails to specify what information was not conveyed. Instead, the undisputed evidence shows that, after the second episode of Video Hot Mix aired on October 8, 2011, Keane at CBS asked Guasch to confirm Grandison had the rights to air the music and videos in the show. In an e-mail dated just three days later, October 11, Guasch told Muqaddin that CBS "is asking whether you have music licenses with ASCAP and BMI to air the music [¶] (see below for what she needs)." Muqaddin responded to Guasch on October 12, and, within the hour, Guasch forwarded Muqaddin's response to CBS. Muqaddin's response, however, failed to allay CBS's concerns.

Apparently in an attempt to avoid licensing issues, Grandison delivered, on November 4, 2011, a new version of Video Hot Mix to CBS. On November 7, Guasch forwarded an e-mail from CBS to Muqaddin asking that several concerns about the new show be addressed before the show could be aired; for example, CBS needed "a weekly written disclosure of all promotional consideration in the show [to be] sent to the station." Although Grandison disputed that he failed to meet CBS's conditions, he cited no evidence showing a dispute.[9] Instead, Grandison was asked at his deposition: "Did you provide the weekly written disclosures, show credits, and those things, to KCAL after receiving this e-mail?" "So to answer my question, no, you did not meet the conditions that were set forth in this email, right?" He answered, "Correct. It's ridiculous because I'm sure they don't do that for all other paid programmings. Ridiculous request. . . ." Grandison therefore knew that CBS wanted him to provide certain information, but he disregarded their request.

To the extent Cox Reps had a duty to forward communications from CBS and KCAL to Grandison, there is no triable issue of material fact that Cox Reps complied with that duty.

---

**9** Grandison merely disputed the date of the e-mail; he did not otherwise dispute the fact. At his deposition he admitted he received the e-mail.

12

D. *The fraud cause of action.*

Like the negligence "cause of action," Grandison's fraud cause of action appears to be based on nothing more than breach of contract. True, tort damages have been allowed in some contract cases, for example, where the contract was fraudulently induced. (*Erlich v. Menezes, supra,* 21 Cal.4th at pp. 551-552.) But fraud still requires an intentional misrepresentation of material fact with knowledge of its falsity and intent to induce reliance, actual reliance, and damages proximately caused by the reliance. (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.)

Here, Grandison merely alleged that from October 15, 2011 through December 24, 2011, "Defendant represented to Plaintiff no reason for the breach of contract." It is unclear what this means or why it constitutes an "intentional misrepresentation." He also alleged that Cox Reps had no authority to make "promises on airtime." Cox Reps "intentionally made representations falsely and fraudulently and induced plaintiff to enter into the original contract." He clarifies in his briefs that Guasch said she "had authority," Grandison would get a 13-week airtime contract, and Guasch had a surplus of airtime to sell. These representations concern nothing more than nonperformance of the contract. But " 'something more than nonperformance is required to prove the defendant's intent not to perform his promise.' . . . [I]f plaintiff adduces no further evidence of fraudulent intent than proof of nonperformance of an oral promise, he will never reach a jury." (*Tenzer v. Superscope, Inc.* (1985) 39 Cal.3d 18, 30-31.)

## III. Any claim regarding an award of attorney fees is not properly before us.

Grandison contends that an attorney fees award was excessive. The record, however, does not show that attorney fees were awarded to Cox Reps. The order granting summary judgment stated only that defendant was entitled to "costs of litigation." The judgment awarded costs "and attorney's fees to the extent permitted by law." It is therefore unclear on this record whether attorney fees were awarded.

In any event, a memorandum of costs in the amount of $11,488.87 was filed, but it does not appear that Grandison moved to tax costs. (§ 1033.) Having failed to object to

13

costs and any attorney fees award, the issue is forfeited on appeal. (See, e.g, *Jimenez v. City of Oxnard* (1982) 134 Cal.App.3d 856, 859.) Moreover, the record on appeal does not contain either the memorandum of costs or a motion to tax costs. The record is therefore inadequate to review any claim regarding costs or fees. (*Vo v. Las Virgenes Municipal Water Dist.* (2000) 79 Cal.App.4th 440, 447.)

**DISPOSITION**

The judgment is affirmed.  Defendant and respondent is to recover its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ALDRICH, Acting P. J.

We concur:

LAVIN, J.

JONES, J.*

_____

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

15