Filed 2/25/14  HSBC Bank USA, Nat. Assn. v. Cappello CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| HSBC BANK USA, NATIONAL ASSOCIATION,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ALEXANDER L. CAPPELLO et al.,<br><br>    Defendants and Appellants. | B236346<br><br>(Los Angeles County<br>Super. Ct. No. BC428453) |
| ALEXANDER L. CAPPELLO et al.,<br><br>    Cross-complainants and Appellants,<br><br>    v.<br><br>HSBC BANK USA, NATIONAL ASSOCIATION et al.,<br><br>    Cross-defendants and Respondents. | B240491<br><br>(Los Angeles County<br>Super. Ct. No. BC428453) |

APPEALS from judgments of the Superior Court of Los Angeles County. Terry A. Green, Judge.  Affirmed.

Greenberg Glusker Fields Claman & Machtinger, Judy M. Lam and Lori L. Werderitch for Cross-complainants, Defendants and Appellants.

Katten Muchin Rosenman, Stuart Richter and Yonaton Rosenzweig for Cross-defendants, Plaintiff and Respondents.

_____

These two consolidated appeals follow the sustaining of a demurrer without leave to amend a cross-complaint and a summary judgment in favor of the plaintiff, in this collection action.  We discuss each set of pleadings and rulings separately.  For the reasons set forth below, we affirm the judgments.

Briefly, by way of background, in March 2007, plaintiff HSBC Bank USA, National Association (the Bank) loaned to defendant Alexander Cappello (Cappello) the sum of $3 million, pursuant to the terms of a note.  In January 2009, Cappello restated the note and executed a revolving demand note, pursuant to which the loan was due on April 1, 2009.  The loan was guaranteed by the "Alexander L. and Linda Cappello 2001 Family Trust" (Trust) and Euro American Financial Corp. doing business as Cappello Group (Euro American).  After the Bank made demand on Cappello to pay all sums due and payable, including interest, no payment was made.  On December 21, 2009, the Bank filed a verified complaint for breach of revolving demand note, breach of guaranties, claim and delivery, conversion, and money lent.

## THE FIRST APPEAL—DEMURRER TO CROSS-COMPLAINT

In May 2011, a year and a half after the lawsuit was initiated, the trial court permitted Cappello and Cappello Group, Inc.[1] (the Cappello parties) to file a cross-complaint against the Bank and its employee, James C. Colman (Colman). We conclude that the trial court properly sustained without leave to amend the Bank's and Colman's demurrer to the cross-complaint on the ground that no independent tort duty arose out of this ordinary commercial transaction.

**Allegations of the Cross-Complaint**

The cross-complaint alleged as follows: Cappello is an investment banker and principal of Cappello Group, Inc. During Cappello's course of dealing with the Bank, he "resolved to sell to Dr. Steven Funk [Funk] an equity interest in Cappello Group or form with Dr. Funk a newly-formed entity holding many of Mr. Cappello's assets for up to $10 million." Cappello and Funk had been "closely acquainted" for more than 20 years. Nevertheless, Funk "required as a pre-condition to the $10 million investment, a positive reference from a bank to support Mr. Cappello's reputation in the local community and his capacity for growing Cappello Group."

Cappello informed Colman, who was his relationship officer at the Bank, of the potential investment that would be used to pay off the Bank and several other creditors, and of the "critical" importance of a positive reference. Colman "unequivocally promised" that he would provide the necessary positive reference. Colman's promise was made with the understanding that Funk was already aware that a loan was in default and that the default was the very reason Cappello was seeking investors.

Colman and Funk spoke by phone. Despite Colman's promises and representations, he "fumbled" the call. Colman told Funk that the Bank considered its relationship with Cappello to be of no substantive value; did not consider Cappello to be a good client; did not find any value in Cappello's contacts, network or ability to develop and grow Cappello Group, Inc.; and that it had never benefitted from Cappello's contacts

---

[1]    Cappello denies that Cappello Group, Inc. is the same company as Euro American.

or network. Colman later represented to Funk that the phone call went "great," and "fine," when it had not.

Colman's comments "killed the investment." Funk took from the comments that Cappello's relationship with the Bank was at an end. Funk called other officers of the Bank, one of whom essentially refused to talk to him, was extremely rude, and hung up. Two other officers never returned his calls. "As a direct result of the extremely negative reference Dr. Funk received from Mr. Colman, and the equally negative handling by the other HSBC officers, Dr. Funk cancelled his intended investment of $10 million."

Cappello had other favorable, professional and banking relationships. Based on Colman's promise to provide a positive reference, Cappello did not seek additional references. Had Cappello believed there was any possibility that Colman would provide a negative reference, Cappello would never have arranged the phone call. Instead, Cappello would have secured references from the other banks with whom he had a business relationship. The Cappello parties have been "unable to secure another investor."

The cross-complaint alleges four causes of action for negligence, negligent misrepresentation, negligent interference with prospective economic advantage, and promissory estoppel, and seeks $10 million in damages.

**The Ruling**

The trial court sustained the Bank's and Colman's demurrer to the cross-complaint without leave to amend, dismissing the cross-complaint in its entirety. This ruling had the effect of dismissing as parties from the lawsuit both Colman and Cappello Group, Inc. The Cappello parties filed a notice of appeal on September 30, 2011.

**Standard of Review**

We review de novo a trial court's sustaining of a demurrer without leave to amend, exercising our independent judgment as to whether a cause of action has been stated as a matter of law. (*People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 300; *Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125.) We assume the truth of properly pleaded allegations in the complaint and give the complaint

4

a reasonable interpretation, reading it as a whole and with all its parts in their context. (S*top Youth Addiction, Inc. v. Lucky Stores, Inc.* (1998) 17 Cal.4th 553, 558; *People ex rel. Lungren v. Superior Court, supra,* at p. 300.) "'However, we will not assume the truth of contentions, deductions, or conclusions of fact or law.'" (*Total Call Internat., Inc. v. Peerless Ins. Co.* (2010) 181 Cal.App.4th 161, 166.) We will also disregard allegations which are contrary to law or to judicially noticed facts. (*Wolfe v. State Farm Fire & Casualty Ins. Co.* (1996) 46 Cal.App.4th 554, 559–560.) Thus, admissions of a party in prior sworn statements or pleadings may be taken as true on demurrer. (*Able v. Van Der Zee* (1967) 256 Cal.App.2d 728, 734; *C.R. v. Tenet Healthcare Corp.* (2009) 169 Cal.App.4th 1094, 1103 [on demurrer, "the truth of [sworn] statements may be accepted when made by a party"]; *Valerio v. Andrew Youngquist Construction* (2002) 103 Cal.App.4th 1264, 1271 [a party's admission in the pleadings is binding]; *Rauber v. Herman* (1991) 229 Cal.App.3d 942, 954 [taking judicial notice on demurrer of plaintiff's declarations filed in support of preliminary injunction]; *Del E. Webb Corp. v. Structural Materials Co.* (1981) 123 Cal.App.3d 593, 604 ["the court passing upon the question of the demurrer may look to affidavits filed on behalf of plaintiff," as well as the plaintiff's answers to interrogatories, request for admissions, and the like].)

We apply the abuse of discretion standard in reviewing a trial court's denial of leave to amend. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318; *Hernandez v. City of Pomona* (1996) 49 Cal.App.4th 1492, 1497–1498.) On appeal, the plaintiff bears the burden of proving there is a reasonable probability that an amendment may cure any defect. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.) To meet this burden, the plaintiff must show (1) the manner in which he or she intended to amend the complaint and (2) how the proposed amendment will change the legal effect of the complaint. (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43.) The plaintiff must clearly and specifically set forth the factual allegations that sufficiently state all required elements of the cause of action, and the "[a]llegations must be factual and specific, not vague or conclusionary." (*Id.* at p. 44.) If the plaintiff fails to make the required showing, the judgment of dismissal must be sustained. (*Goodman v. Kennedy*

(1976) 18 Cal.3d 335, 349–350.) "A plaintiff may not avoid a demurrer by pleading facts or positions in an amended complaint that contradict the facts pleaded in the original complaint or by suppressing facts which prove the pleaded facts false." (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 877.)

**The Trial Court Properly Sustained the Demurrer Without Leave to Amend**

### *No Duty of Care*

The cross-complaint asserts negligence causes of action based on a duty of care. But the allegations of the cross-complaint sound in contract. The cross-complaint repeatedly alleges that Colman, on behalf of the Bank, made an oral "promise" to Cappello to provide a positive reference to Funk and then broke this promise.

A party may not convert a broken promise into a tort by simply pleading breach of a duty of care. (See *Erlich v. Menezes* (1999) 21 Cal.4th 543, 553 [courts must avoid "converting every contract breach into a tort"]; *Stop Loss Ins. Brokers, Inc. v. Brown & Toland Medical Group* (2006) 143 Cal.App.4th 1036, 1041 ["Despite the cross-complaint's use of negligence terminology, the alleged misconduct by [defendant] describes, at most, a breach of contract, not a breach of a legal duty of care"].)

An exception to the general rule that contracting parties do not owe one another a duty in tort arises in the context of a "special relationship." (*Egan v. Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 820.) Such a relationship exists when "public policy considerations" support imposition of tort-based exemplary damages, as opposed to contract-based compensatory damages. (*Ibid.*) Thus, courts have held that the "superior bargaining position" of the insurer in an insurance contract gives rise to a special relationship, permitting the insured to bring tort-based claims against the insurer. (*Ibid.*)

In the pivotal case of *Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654 (*Foley*), our Supreme Court declined to find a special relationship giving rise to a tort duty in the employer-employee context. (*Id.* at p. 692.) The *Foley* Court cautioned future courts to carefully consider "the fundamental polices underlying the development of tort and contract law in general" and the unique qualities of the insured/insurer

6

relationship, where tort remedies are available, before extending tort remedies for broken promises in arms-length relationships. (*Id*. at pp. 689–690.)

In *Mitsui Manufacturers Bank v. Superior Court* (1989) 212 Cal.App.3d 726 (*Mitsui*), upon which the trial court here relied, the reviewing court declined to impose a tort duty when a lender reneged on an alleged oral promise to the borrowers. There, the borrowers had signed short-term promissory notes for approximately $2 million, and the bank had orally promised to renew the short-term credit indefinitely until long-term financing could be secured and to provide the long-term financing itself if needed. (*Id*. at pp. 728–729.) After several renewals, the bank demanded payment in full. The borrowers, like the Cappello parties here, cross-complained for tort damages arising from the bank's alleged oral promise. (*Id*. at p. 729.) Relying on *Foley*, the *Mitsui* Court explained: "*Foley*, impliedly if not expressly, limits the ability to recover tort damages in breach of contract situations to those where the respective positions of the contracting parties have the fiduciary characteristics of that relationship between the insurer and insured." (*Id*. at p. 730.) The *Mitsui* Court went on to find that "the ordinary arms-length commercial lender/borrower relationship was insufficient as a matter of law to generate tort damages for the breach of the covenant of good faith and fair dealing" (*id*. at p. 729), and that the lender's alleged oral promise to grant renewals was not sufficiently unique to create a special relationship between the contracting parties (*id*. at p. 731).

As the Bank points out, following *Mitsui* our Supreme Court has twice reaffirmed that claims for tortious breach of a promise in an arms-length relationship are rare and require special circumstances well beyond a mere promise. (*Freeman & Mills, Inc. v. Belcher Oil Co.* (1995) 11 Cal.4th 85, 95 ["courts should limit tort recovery in contract breach situations to the insurance area, at least in the absence of violation of an independent duty arising from principles of tort law other than denial of the existence of, or liability under, the breached contract"]; *Erlich v. Menezes*, *supra*, 21 Cal.4th at p. 554 ["Focusing on intentional conduct gives substance to the proposition that a breach of contract is tortious only when some independent duty arising from tort law is violated"].)

7

We find this case to be no different from *Mitsui* and its progeny. In *Mitsui*, the bank orally promised to extend the borrowers' notes until they could secure long-term financing so that they would not default on their loans, and then reneged on its promise. Likewise here, allegedly the Bank orally promised to provide a positive reference for Cappello so that he could raise funds to pay off his defaulted loan, and then reneged on its promise. Both situations involved an arms-length commercial transaction and a promise based on that transaction. Under *Foley*, these facts are insufficient to give rise to a special relationship imposing a duty of care.

The Cappello parties' attempt to limit *Mitsui* to the specific cause of action at issue (tortious breach of the covenant of good faith and fair dealing) is unpersuasive. As noted above, *Mitsui* relied heavily on *Foley*, applying its concepts to the lender-borrower relationship. And *Foley* broadly disapproved of extending tort damages to contract cases in general.

The Cappello parties' reliance on *Nymark v. Heart Fed. Savings & Loan Assn.* (1991) 231 Cal.App.3d 1089 is misplaced. *Nymark* actually stands for the same proposition as *Mitsui*: "[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money. [Citations.] . . . 'Liability to a borrower for negligence arises only when the lender "actively participates" in the financed enterprise "beyond the domain of the usual money lender."'" (*Id*. at p. 1096, fn. omitted.) Indeed, *Nymark* noted: "'[A] strong public policy exists, if our financial institutions are to remain solvent, to prevent a conventional money lender from having to insure [the success of every investment].'" (*Id*. at pp. 1099–1100.)

The Cappello parties' reliance on *Holcomb v. Wells Fargo Bank, N.A.* (2007) 155 Cal.App.4th 490 is also misplaced, since that case is distinguishable. There, the reviewing court reversed the trial court's sustaining of a demurrer to a negligent misrepresentation claim, where the complaint alleged that a bank's branch manager told a depositor that a $10,000 check had cleared and he could write checks against the deposit, when the manager had been informed that the check had in fact been returned for

8

insufficient funds. (*Id*. at p. 499.) By contrast here, the cross-complaint does not allege that Colman made a representation to Cappello about the status of Cappello's bank account or loan; rather, the cross-complaint involves the very different scenario where Colman made an alleged promise to Cappello and then reneged on that promise.

### *No Cure by Amendment*

The Cappello parties argue they should be given leave to amend their cross-complaint to plead facts that take this case outside of the ordinary commercial lender/borrower relationship. Specifically, they argue that "an amendment can more fully demonstrate how HSBC's voluntary assumption of duty was a separate agreement to take on the Funk Investment, to vouch for Appellants, and to make crystal clear how HSBC went beyond the scope of its role as a mere lender of money, voluntarily injecting itself into an independent business deal that was separate from HSBC's collection efforts." As a matter of law, these amendments cannot be made.

As noted above, a plaintiff cannot avoid a demurrer by amending a complaint to plead facts or positions that contradict or suppress facts or positions previously pled, even in another action. (*Cantu v. Resolution Trust Corp., supra*, 4 Cal.App.4th at p. 877; *Able v. Van Der Zee*, *supra*, 256 Cal.App.2d at p. 734 ["A general demurrer may properly be sustained without leave to amend where the broad allegations of the plaintiff's complaint are directly contradicted by an affidavit filed voluntarily in opposition to the defendant's demurrer"].)

In support of the demurrer, the Bank requested the trial court to take judicial notice of the "Verified Second Amended Answer To Complaint," verified by Cappello.[2] As part of the affirmative defenses of "Failure to Mitigate," "Set-Off or Offset," and "Unclean Hands," Cappello asserted that the Bank "promise[d] to provide a favorable recommendation as a part of the modification [of the terms of the demand note], which

---

[2] The parties do not point to any place in the record showing a specific ruling on this request by the trial court; however, we note that the written ruling on the demurrer states that the trial court "has considered the pleadings and papers submitted by counsel."

9

Mr. Cappello signed in partial reliance upon such promises." Thus, any amended pleading that Colman's promise of a positive reference was somehow a separate or independent transaction from the loan transaction would impermissibly contradict these prior verified assertions. Moreover, the cross-complaint itself alleges that Colman's promise was made with the understanding that a loan was in default and that the default was the very reason Cappello was seeking investors.

As aptly stated by the Bank, these "sworn statements and pleadings have tied [the Bank's] alleged promise for a favorable recommendation to the lending relationship," and the Cappello parties "cannot now un-plead these facts."[3]

## THE SECOND APPEAL—MOTION FOR SUMMARY JUDGMENT

We conclude that the trial court properly granted the Bank's second summary judgment motion, on the grounds that there are no triable issues of material fact as to appellants' affirmative defenses, and that appellants' remaining claims of procedural error have no merit.[4]

**Procedural Background**

*The First Summary Judgment Motion*

In their amended answer to the Bank's verified complaint, appellants raised two affirmative defenses (Failure to Mitigate and Set-Off) based on Colman's broken promise to provide a positive reference to Funk about Cappello, what the parties refer to as the "Funk Defense." After receiving interrogatory responses that appeared to abandon the Funk Defense, the Bank filed its first motion for summary judgment on September 29, 2010, on the grounds that the loan was valid, due and unpaid.

---

[3] In light of our conclusion, we need not address the parties' remaining arguments regarding the correctness of the trial court's ruling sustaining the demurrer without leave to amend.

[4] For purposes of the appeal from the summary judgment, we will refer to defendants Cappello, Euro American and "Alexander L. Cappello and Linda N. Cappello as trustees of The Alexander L. and Linda Cappello 2001 Family Trust" collectively as "appellants."

10

Appellants opposed the motion by reviving the Funk Defense and submitting Funk's declaration. Funk declared that following his telephone call with Colman, he was left with an "extremely negative impression" of Cappello and that he understood Cappello's relationship with the Bank was at an end. Funk also declared that his conversation with Colman "stuck a dagger in the very heart" of his $10 million loan or investment that he was considering making to Cappello's company. In March 2010 (after the Bank filed this lawsuit), Funk contacted Bank officer, Fred Schimel, who essentially refused to talk to Funk, was extremely rude and hung up on him. Funk tried contacting Mr. Schimel's supervisor, Richard Werner, who never returned his calls. Funk also tried contacting Mr. Werner's supervisor, Gerald Nagle, who eventually left a voicemail stating that he would not speak to Funk without an attorney. Funk concluded: "As a direct result of the extremely negative reference I received from Mr. Colman, and the equally negative handling by the other HSBC officers, I abandoned my intended investment in the Cappello Group."

The trial court denied the first motion for summary judgment without prejudice, finding disputed issues of material fact regarding the Funk Defense. Because the Bank had been unable to obtain discovery regarding Funk, the trial court continued the trial, and ordered appellants to produce discovery regarding Funk.

### The Second Summary Judgment Motion

After Funk appeared for his deposition, the Bank moved for summary judgment a second time in October 2011, relying on Funk's deposition testimony. In his deposition, Funk admitted that he maintained significant interest in investing in Cappello's company well after his conversation with Colman, which took place in March 2009.[5] The motion

---

[5]    Funk testified as follows:
"Q. Okay, but after your conversation with Mr. Colman you continued to do your due diligence and look toward doing an investment, though? [¶] A. Right. [¶] Q. So when you say 'stuck a dagger,' the possibility of investment wasn't done. [¶] A. What date was that [declaration] signed? [¶] Q. This was signed in January 2011. [¶] A. A lot of retrospect there. [¶] Q. And what do you mean by that, a lot of retrospective? [¶] A. If you look back at it this deal was never going anywhere and the next guy hung up

11

attacked the Funk Defense and sought judgment on the collection claims.  Among the grounds for the motion was that Funk's conversation with Colman was not the legal cause of Funk's decision not to invest.

In opposition, appellants argued that the motion was an improper second attempt at summary judgment.  They also argued that inconsistencies between Funk's declaration and deposition testimony created triable issues of fact.

The trial court sustained the Bank's objections to those portions of Funk's declaration testimony that were inconsistent with his deposition testimony.  The trial court found there were no disputed issues of material fact as to the Funk Defense, and entered judgment on the Bank's collection claims.  Appellants filed a notice of appeal from the summary judgment on April 11, 2012.

**Standard of Review**

We review a grant of summary judgment de novo, considering "'all of the evidence set forth in the [supporting and opposition] papers, except that to which objections have been made and sustained by the court, and all [uncontradicted] inferences reasonably deducible from the evidence.'" (*Artiglio v. Corning Inc.* (1998) 18 Cal.4th 604, 612.)  "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.)  "On review of a summary judgment, the appellant has the burden of showing error, even if he did not bear the burden in the trial court." (*Claudio v. Regents of University of California* (2005) 134 Cal.App.4th 224, 230.)  "'[D]e novo review does not obligate us to cull the record for the benefit of the

---

on me. [¶]  Q.  I see.  So you are looking back it retrospectively but at that time you were still willing to pursue an investment?  [¶]  A.  Correct."  Funk testified that "as late as April of 2010 I was still prepared to consider an investment in this business."  Funk testified that what Colman told him was not consistent with his personal beliefs about Colman, and that he thought Colman was "young" and "inexperienced."  Funk also testified that his inability to communicate with the Bank's other officers was "critical" to his decision not to invest in Cappello's company, and that he was not willing to invest while the loan was in recovery or litigation.

12

appellant in order to attempt to uncover the requisite triable issues.  As with an appeal from any judgment, it is the appellant's responsibility to affirmatively demonstrate error and, therefore, to point out the triable issues . . .'"  (*Ibid*.)  "If the trial court's decision is correct on any legal theory, the judgment will be affirmed." (*Marshak v. Ballesteros* (1999) 72 Cal.App.4th 1514, 1517.)

**The Trial Court Properly Granted Summary Judgment**

*No Triable Issues of Material Fact*

Appellants argue that summary judgment should not have been granted because triable issues of material fact existed as to their affirmative defenses.  To prove their point, appellants basically just cite cases for the proposition that their affirmative defenses are factual questions that should be left for trial.  But appellants overlook that issues within their defenses can be questions of law—such as causation.  "A question of fact can become one of law, however, when only one reasonable conclusion can be drawn from the undisputed foundational facts." (*Weber v. Langholz* (1995) 39 Cal.App.4th 1578, 1583.)

Appellants' attempt to create triable issues of fact regarding the Funk Defense fail. They argue that any inconsistencies between Funk's declaration and his deposition testimony should have been resolved in their favor and left for trial.  But appellants ignore the fact that the trial court sustained the Bank's evidentiary objections to those portions of Funk's declaration testimony that were inconsistent with his deposition testimony.  Appellants do not challenge this ruling on appeal.  Accordingly, only Funk's deposition testimony was in evidence.

Funk's deposition testimony makes clear that his March 2009 conversation with Colman was not the proximate cause of his decision not to invest with Cappello.  "Unless the act complained of was the proximate cause of the injury, there is no liability." (*Augustine v. Trucco* (1954) 124 Cal.App.2d 229, 246.)  Funk admitted that as late as April 2010, more than a year after the conversation, he was still prepared to consider investing with Cappello.  Based on this undisputed evidence, the trial court correctly

13

found that "Colman's negative reference to Funk was not the legal cause for Funk deciding not to invest in the Cappello Parties."

To the extent appellants rely on Funk's testimony that he abandoned his investment based on his postlitigation conversations with the Bank's officers, these facts were not pled as part of appellants' affirmative defenses in either the amended or verified second amended answers. The trial court acted within its discretion to refuse to consider an unpled theory. (See *Valerio v. Andrew Youngquist Construction* (2002) 103 Cal.App.4th 1264, 1271–1272.)

### *Appellants' Remaining Claims of Procedural Error Fail*

Appellants raise three additional contentions as to why the trial court erred in granting the Bank's second summary judgment motion, none of which have merit.

First, appellants argue that the trial court should not have entertained the second motion because it was merely a repackaging of the first summary judgment motion. Code of Civil Procedure 437c, subdivision (f)(2) provides that "a party may not move for summary judgment based on issues asserted in a prior motion for summary adjudication and denied by the court, unless that party establishes to the satisfaction of the court, newly discovered facts or circumstances or a change of law supporting the issues reasserted in the summary judgment motion." Here, newly discovered facts were present. After the first summary judgment motion was denied, the Bank compelled discovery, including Funk's deposition. Funk's deposition testimony made clear that, contrary to his earlier declaration testimony, he remained interested in investing with Cappello for at least a year after receiving Colman's negative reference of Cappello, and decided not to invest because the Bank was enforcing its collection rights. The trial court was properly satisfied that the second motion was "a wholly new motion built on wholly new evidence that was discovered after the last one."

Appellants next argue that the trial court erred in granting summary judgment because the notice of the second motion sought adjudication of only three affirmative defenses (failure to mitigate, offset and unclean hands) leaving three other defenses (waiver, estoppel and excuse) for trial. This argument is disingenuous. The notice for

14

the second summary judgment motion states: "[B]ecause the Court was previously prepared to grant summary judgment on HSBC's claim but for the Funk Defense, if the Court grants summary adjudication as to the Cappello Parties' three remaining Affirmative Defenses [failure to mitigate, offset and unclean hands], then HSBC will and hereby does move for summary judgment as to its First, Second, and Third causes of action. If granted, then HSBC will withdraw its remaining claims and respectfully requests final judgment against the Cappello Parties and each of them." The trial court granted summary adjudication as to the three noticed affirmative defenses and as to the first three causes of action. Because each cause of action was decided in favor of the Bank, there were no remaining defenses. (See *Aguilar v. Atlantic Richfield Co., supra*, 25 Cal.4th at p. 853 [when a plaintiff moves for summary judgment, each defense is put at issue and the plaintiff is not required to disprove every defense].)

Finally, appellants argue that the trial court lacked jurisdiction to hear the second summary judgment motion while the notice of appeal from the judgment dismissing the cross-complaint following the sustaining of the Bank's and Colman's demurrer was pending in this court. Code of Civil Procedure section 916, subdivision (a) provides that "the perfecting of an appeal stays proceedings in the trial court upon the judgment or order appealed from or upon the matters embraced therein or affected thereby, including enforcement of the judgment or order, but the trial court may proceed upon any other matter embraced in the action and not affected by the judgment or order." Here, the first notice of appeal on file was from a judgment following a demurrer to a cross-complaint; it had nothing to do with summary judgment on the complaint. Thus, the trial court ruled on a separate matter not affected or embraced by the appealed ruling on the demurrer.

15

## DISPOSITION

The judgments are affirmed. The Bank is entitled to recover its costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
ASHMANN-GERST


We concur:


_____, P. J.
BOREN


_____, J.[*]
FERNS

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.