Filed 12/2/21 (unmodified opn. attached)

# CERTIFIED FOR PUBLICATION

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| DRINK TANK VENTURES LLC, | B298881, consolidated with B302215 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC654392) |
| v. | |
| REAL SODA IN REAL BOTTLES, LTD., et al., | ORDER MODIFYING OPINION AND DENYING REHEARING |
| Defendants and Appellants. | NO CHANGE IN THE JUDGMENT |

THE COURT:

It is ordered that the opinion filed on November 10, 2021, be modified as follows:

1. On page 6, in the second paragraph of section II.B., insert a footnote at the end of the first sentence (which ends with the phrase "that Real Soda and Ginsburg had breached the NDA"), and renumber all subsequent footnotes. The new footnote should read:

**4**     Although the trial court refused to give Drink Tank's proposed instruction that spelled out in greater detail *how* Real Soda violated the NDA, there is no question that Drink Tank opted to rest its claim solely on violations of the NDA.

2.  On page 17, insert "(*Varian Medical Systems*)" immediately before the parenthesis ending the citation to *Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 196 so that the full citation reads:

> (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 196 (*Varian Medical Systems*))

3.  On page 20, after the sentence "For these reasons, we conclude that the absence of subject matter jurisdiction is cognizable in this appeal," add the following sentence:

> What is more, this error is cognizable without an additional showing of a miscarriage of justice. (*Varian Medical Systems*, *supra*, 35 Cal.4th 180, 199, fn. 10 [where trial court is divested of subject matter jurisdiction, the "miscarriage of justice" requirement in Article VI, section 13 of the California Constitution "does not and cannot reconfer such jurisdiction"]; cf. *In re Jesusa V.* (2004) 32 Cal.4th 588, 624 [where trial court has subject matter jurisdiction, but merely acts in excess of jurisdiction, the miscarriage of justice requirement applies].)

2

\* \* \*

There is no change in the judgment.

Respondent's petition for rehearing is denied.

_____

LUI, P. J.        ASHMANN-GERST, J.        HOFFSTADT, J.

Filed 11/10/21 (unmodified opinion)

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA


SECOND APPELLATE DISTRICT


DIVISION TWO


| | |
|---|---|
| DRINK TANK VENTURES LLC, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> REAL SODA IN REAL BOTTLES, LTD., et al., <br><br> Defendants and Appellants. | B298881, consolidated with B302215 <br><br> (Los Angeles County Super. Ct. No. BC654392) |


APPEAL from a judgment and postjudgment orders of the Superior Court of Los Angeles County, Terry A. Green, Judge. Judgment reversed with directions to dismiss complaint; postjudgment order vacated.

Felsenthal Law Firm and David B. Felsenthal; Joseph S. Socher for Defendants and Appellants.

JDP and Jeff Dominic Price for Plaintiff and Respondent.

* * * * * *

One beverage distributorship sued another for several claims, but ultimately narrowed its lawsuit to a solitary tort claim for intentional interference with a prospective economic advantage premised solely on the theory that the other had engaged in independently wrongful conduct by breaching a nondisclosure and noncircumvention agreement.  This is an invalid theory as a matter of law because, as our Supreme Court has said time and again, an actor's breach of contract, without more, is not "wrongful conduct" capable of supporting a tort (*Erlich v. Menezes* (1999) 21 Cal.4th 543, 551-552 (*Erlich*); *Cates Construction, Inc. v. Talbot Partners* (1999) 21 Cal.4th 28, 54 (*Cates*)), including the tort of intentional interference with a prospective economic advantage (*Arntz Contracting Co. v. St. Paul Fire & Marine Ins. Co.* (1996) 47 Cal.App.4th 464, 478-479 (*Arntz*); *JRS Products, Inc. v. Matsushita Electric Corp. of America* (2004) 115 Cal.App.4th 168, 183 (*JRS Products*)).  Unfortunately, no one—not the plaintiff, not the defendant, not the trial court—caught this error until the defendant moved for judgment notwithstanding the verdict after the jury returned a special verdict in the plaintiff's favor that was premised solely on the breach of the agreement.

We hold that where the jury's special verdict for the plaintiff is based on conduct that does not constitute an actionable tort, that verdict cannot stand.  That is because, just as a trial court lacks subject matter jurisdiction to enter judgment for conduct that does not violate a criminal or civil statute (e.g., *Dollenmayer v. Pryor* (1906) 150 Cal. 1, 5 (*Dollenmayer*); *People ex rel. Allstate Ins. Co. v. Weitzman* (2003) 107 Cal.App.4th 534, 545-546 (*Weitzman*); *People v. Vasilyan* (2009) 174 Cal.App.4th 443, 450 (*Vasilyan*)), a trial court also

2

lacks subject matter jurisdiction to enter judgment for allegedly tortious conduct, fashioned by common law, that our Supreme Court has determined is not tortious. Because a party's conduct cannot confer subject matter jurisdiction upon a court, the defendant's delay in objecting is irrelevant. And because the plaintiff voluntarily whittled down its lawsuit to a solitary claim and then submitted a special verdict form requiring the jury to expressly find the invalid theory true, we may not infer other findings to "save" that verdict and must accordingly reverse that judgment and dismiss the plaintiff's case. The attorney fees order premised on the plaintiff prevailing consequently falls as well.

## FACTS AND PROCEDURAL BACKGROUND

### I. Facts

#### A. *Relationship between Real Soda and Drink Tank*

Both Real Soda in Real Bottles, Ltd. (Real Soda) and Drink Tank Ventures, LLC (Drink Tank) distribute beverages and other consumables to retailers and restaurants in the Southern California region. Real Soda distributes old-timey craft sodas; Drink Tank, drinks and snacks.

In early 2014, the founders of Real Soda and Drink Tank— Daniel Ginsburg (Ginsburg) and Benjamin Kim (Kim), respectively—met and became fast friends. Around the time that Drink Tank started renting space for its operations in Real Soda's large warehouse, Drink Tank made overtures about acquiring Real Soda.

In June 2014, Real Soda and Drink Tank signed a Mutual Non-Disclosure and Non-Circumvention Agreement (the NDA).[1]

---

1   Ginsberg is not a party to the NDA.

Among other provisions, the NDA (1) obligated the parties not to "directly or indirectly . . . divert any business, relationships, contracts or other benefits, or otherwise impair any business relationship [the other] has with any third [p]arty" for a period of at least two years, and (2) provided that the "Discloser [of information] shall be entitled to reasonable attorneys' fees and costs" "[i]n the event a dispute arises under this Agreement" "in addition to all other remedies available to the Discloser . . . at law or otherwise."

On December 11, 2014, Real Soda and Drink Tank signed a letter of intent regarding the potential acquisition.

No acquisition occurred because Ginsburg thought Drink Tank's asking price was too low.

**B.** ***So Cal Beverage plays Real Soda and Drink Tank against each other***

Enter Tico Group Inc., a company in the business of distributing beer, wine, and spirits in the Southern California region under the name So Cal Beverage Distributor (So Cal Beverage).

In the fall of 2014, Drink Tank started negotiating with Joseph Tchan (Tchan)— Tico Group, Inc.'s operator—to acquire So Cal Beverage. On December 2, 2014, Drink Tank and So Cal Beverage signed a letter of intent regarding a potential acquisition that obligated each not to negotiate with anyone else for 60 days. Drink Tank and So Cal Beverage exchanged a barrage of draft purchase agreements. Drink Tank consistently offered $240,000 to acquire So Cal Beverage.

In late February 2015, Tchan approached Ginsburg. Within a few weeks, Real Soda started negotiating to acquire So Cal Beverage. On April 2, 2015, Real Soda and So Cal Beverage

4

signed a letter of intent regarding a potential acquisition for $250,000. Pursuant to that letter, Real Soda gave So Cal Beverage a deposit of $5,000 on April 2 and a further payment of $125,000 on April 23, when the two companies signed a purchase agreement.

As the trial court aptly observed, Tchan was "play[ing] both sides" by negotiating with both Drink Tank and Real Soda simultaneously. From emails with Kim, Ginsburg knew about the December 2014 letter of intent between Drink Tank and So Cal Beverage, and knew that those negotiations were still ongoing in mid-March 2017 (because one of Drink Tank's investors flew to California regarding the possible deal). But Tchan assured Ginsburg that he had become dissatisfied and upset with the state of negotiations with Drink Tank, and that he had advised Drink Tank that the negotiations were effectively over. As a result, Tchan and Ginsburg did not inform Drink Tank about their negotiations. At the same time, however, Tchan never told Drink Tank that he was dissatisfied; instead, he kept negotiating with Drink Tank by continuing to provide feedback on draft purchase agreements—up to and even *after* he accepted the deposits from Real Soda.

### C. *Real Soda acquires So Cal Beverage*

Real Soda ended up paying the full $250,000 purchase price, and acquired So Cal Beverage.[2]

---

[2] Real Soda later prevailed in an unrelated arbitration proceeding against So Cal Beverage and Tchan to unwind the deal and recover damages.

## II.    Procedural Background

### A.    *Pleadings*

In March 2017, Drink Tank sued Real Soda and Ginsburg for (1) breach of contract and two torts regarding their alleged interference with a contract or potential contract between Drink Tank and a water supplier,[3] and (2) intentional interference with a prospective economic advantage—namely, Drink Tank's possible acquisition of So Cal Beverage—because Real Soda and Ginsburg (a) "breach[ed]" the NDA, and (b) otherwise "tortiously interfer[ed] in [Drink Tank's] economic relationship and negotiations with" So Cal Beverage.

Drink Tank prayed for actual damages from Real Soda and Ginsburg exceeding $1.3 million as well as punitive damages.

### B.    *Trial*

On the first day of trial, Drink Tank narrowed its lawsuit to its intentional interference with a prospective economic advantage claim involving So Cal Beverage.

Drink Tank also narrowed its theory of liability on that claim to the theory that Real Soda and Ginsburg had breached the NDA.  The court instructed the jury that Drink Tank had to prove "that Real Soda . . . and/or [] Ginsburg . . . engage[d] in conduct that violated the written [NDA]."  The trial court kept for itself the legal question whether that conduct was "wrongful." Consistent with these instructions, Drink Tank argued in opening and closing statements that its claim "involve[d] . . . the solemnity of a contract" and that Real Soda and Ginsburg had violated the NDA by "diverting . . . business, diverting

---

[3]    Drink Tank also sued the water supplier, but never served it, so it was never joined as a party to the lawsuit.

6

relationships" away from Drink Tank and to themselves. Although the trial court did not expressly find that Real Soda and Ginsburg's conduct in breaching the NDA was "wrongful," it implicitly did so by submitting the case to the jury. Real Soda and Ginsburg did not object to the trial court's handling of these issues.

After the trial court dismissed the punitive damages allegations, the jury returned a verdict awarding Drink Tank $250,000 in lost business opportunity damages and $100,000 in lost profits. In its special verdict, the jury found that "Real Soda . . . or . . . Ginsburg . . . engage[d] in conduct that violated the written [NDA]." There were no other special verdict findings regarding other possible wrongful conduct by Real Soda or Ginsburg.

The trial court entered judgment for Drink Tank in mid-March 2019.

### C.     *Motion for judgment notwithstanding the verdict (JNOV)*

In April 2019, Real Soda and Ginsburg filed a JNOV motion on the ground, as pertinent here, that the intentional interference verdict is invalid because the breach of a contract (such as the NDA) is not "wrongful" conduct capable of supporting such a claim. Following briefing and a hearing, the trial court denied the motion in May 2019. The court cited three reasons for denying relief on this ground: (1) Real Soda and Ginsburg's challenge to the wrongfulness of the conduct is not a challenge to the sufficiency of the *evidence*, and thus is properly raised in a motion for new trial (and not a motion for JNOV); (2) Real Soda and Ginsburg cannot raise this challenge in a JNOV motion because they had made the "tactical decision[]" not to

object until after the verdict and cannot now "ask the [trial] judge for a mulligan"; and (3) the verdict is supported by *other* wrongful conduct by Real Soda and Ginsburg aside from the breach of the NDA found by the jury, such as making "disparaging" and inaccurate remarks about Drink Tank to Tchan as well as engaging in a "breach of etiquette" by not telling Drink Tank about their negotiations with So Cal Beverage.

### D.  *Motion for attorney fees*

In July 2019, Drink Tank moved for attorney fees pursuant to the remedies clause in the NDA.  Drink Tank sought a total of $785,981.70 in fees.  After further briefing and a hearing, the trial court found that Drink Tank's attorney had overbilled and overcharged; declined to use a multiplier; and awarded fees of $280,700 recoverable against Real Soda.

### E.  *Appeal and cross-appeal*

Real Soda and Ginsburg appealed both the "judgment"  and the postjudgment order denying their JNOV motion, and Real Soda appealed the postjudgment order granting Drink Tank attorney fees.

Drink Tank cross-appealed the attorney fees order, but abandoned that cross-appeal by not briefing any challenge to the trial court's award of attorney fees.

## DISCUSSION

Real Soda and Ginsburg argue that the trial court erred in letting the jury's special verdict stand despite resting on a single tort premised on a legally invalid theory.  This argument requires us to ask three questions:  (1) Did the trial court err in implicitly concluding that Real Soda and Ginsburg's breach of the NDA constituted "wrongful" conduct capable of supporting a claim for intentional interference with a prospective economic advantage?

8

(2) If so, is that error cognizable in this appeal?  (3) If so, what is the proper remedy?  These questions all involve questions of law or the application of law to undisputed facts; as such, our review is de novo.  (*Kaanaana v. Barrett Business Services, Inc.* (2021) 11 Cal.5th 158, 165 [questions of law]; *Boling v. Public Employment Relations Bd.* (2018) 5 Cal.5th 898, 912-913 [application of law to undisputed facts]; *Saffer v. JP Morgan Chase Bank, N.A.* (2014) 225 Cal.App.4th 1239, 1248 (*Saffer*) [subject matter jurisdiction is a question of law].)

## I.    Was There Error?

To prevail on a claim for intentional interference with a prospective economic advantage, the plaintiff must prove (1) "'"an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff"'"; (2) "the defendant's knowledge of the relationship"; (3) (a) the defendant engaged in conduct that interfered with that relationship and (b) the defendant's conduct was "independently wrongful"—that is, "'wrongful by some measure beyond the fact of the interference itself'"; (4) the defendant either intended to interfere with the relationship or "knew that the interference was certain or substantially certain to occur as a result of its" conduct; and (5) the defendant's acts "proximately caused" "economic harm to the plaintiff."  (*Roy Allan Slurry Seal, Inc. v. American Asphalt South, Inc.* (2017) 2 Cal.5th 505, 512 (*Roy Allan Slurry*); *Ixchel Pharma, LLC v. Biogen, Inc.* (2020) 9 Cal.5th 1130, 1141 (*Ixchel*); *Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1153-1154, 1164-1165 (*Korea Supply*); *Della Penna v. Toyota Motor Sales, U.S.A., Inc.* (1995) 11 Cal.4th 376, 392-393 (*Della Penna*); see also CACI No. 2202.)

9

Where, as here, the plaintiff asserts the right to a trial by jury, it is the jury's job to adjudicate whether the plaintiff has proven every element—except the third element. The responsibility of adjudicating the third element is divided between the jury and the trial court: Whether the defendant engaged in interfering conduct (part (3)(a)) is, like the other elements of this tort, a factual question for the jury, but whether that conduct is independently wrongful (part (3)(b)) is a legal question for the trial court. (CACI No. 2202, Directions for Use ["Whether the conduct alleged qualifies as wrongful . . . is resolved by the court as a matter of law"]; *Crown Imports, LLC v. Superior Court* (2014) 223 Cal.App.4th 1395, 1404-1405 (*Crown Imports*) ["The fact that the defendant's conduct was independently wrongful is an element of the cause of action itself"].)

The requirement that the defendant's interference be *independently* wrongful means that it is not enough for a plaintiff to show that the defendant interfered with the plaintiff's economic relationship with the third party (*Della Penna, supra*, 11 Cal.4th at pp. 378-379, 392-393; *Ixchel, supra*, 9 Cal.5th at p. 1142), even if the defendant did so with an improper motive (*Korea Supply, supra*, 29 Cal.4th at pp. 1158 & 1159, fn. 11 ["[a]n act is not independently wrongful merely because defendant acted with an improper motive"]; *San Jose Construction, Inc. v. S.B.C.C., Inc.* (2007) 155 Cal.App.4th 1528, 1544-1545; *Artnz, supra*, 47 Cal.App.4th at p. 477 ["bad thoughts are no tort"]). To establish that the defendant's interfering conduct was *independently* wrongful, the plaintiff must instead prove that the conduct—whether directed at the plaintiff or someone else—was "'proscribed by some constitutional, statutory, regulatory,

10

common law, or other determinable legal standard."' (*Ixchel*, at p. 1142, quoting *Korea Supply*, at p. 1159; *Reeves v. Hanlon* (2004) 33 Cal.4th 1140, 1152; *Crown Imports*, *supra*, 223 Cal.App.4th at p. 1405 [conduct need not be "independently wrongful *as to the plaintiff*"]; accord, *Tri-Growth Centre City, Ltd. v. Silldorf, Burdman, Duignan & Eisenberg* (1989) 216 Cal.App.3d 1139, 1153-1154 [defendant's conduct breached a fiduciary duty; independently wrongful]; *PMC, Inc. v. Saban Entertainment, Inc.* (1996) 45 Cal.App.4th 579, 602-603 (*PMC*) [defendant's conduct violated "federal or state law or unethical business practices," such as "defamation, trade libel or trade mark infringement"; independently wrongful], disapproved on other grounds in *Korea Supply*, at p. 1059, fn. 11.)

What is more, the requirement that the defendant's interference be independently wrongful is an essential—and, indeed, defining and *limiting*—aspect of the tort of intentional interference with a prospective economic advantage. It is quite literally the element that causes the interference to be a tort. (*Korea Supply*, *supra*, 29 Cal.4th at p. 1159 ["It is this independent wrongfulness requirement that makes defendants' interference with plaintiff's business expectancy a tortious act"].) There is a good reason for this. Where the economic relationship between a plaintiff and a third party has ripened into an enforceable contract, that "contract receives greater solicitude" and a defendant's effort to cause a breach of that contract "is . . . a wrong in and of itself." (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 55-56.) But where the plaintiff and a third party have only a "prospective contractual relationship," that third party's business is still up for grabs: "[A]s long as" other market participants "use[] fair and

11

reasonable means" to entice the third party away from the plaintiff, the "privilege of free competition" shields those participants from liability in tort for doing so. (*PMC*, *supra*, 45 Cal.App.4th at p. 603; *Bed, Bath & Beyond of La Jolla, Inc. v. La Jolla Village Square Venture Partners* (1997) 52 Cal.App.4th 867, 881.) The limitation of the tort of intentional interference with a prospective economic advantage to cases where the plaintiff proves that the defendant's conduct was independently wrongful thus "sensibly redresses the balance between providing a remedy for predatory [that is, wrongful] economic behavior" (on the one hand) "and keeping legitimate business competition outside litigative bounds" (on the other). (*Della Penna*, *supra*, 11 Cal.4th at p. 378; *Ixchel*, *supra*, 9 Cal.5th at pp. 1142, 1146.)

Because, as noted above, Drink Tank narrowed its lawsuit to a single claim for intentional interference with a prospective economic advantage and then further narrowed that claim to the theory that Real Soda and Ginsburg's conduct was independently wrongful solely because they "violated the written [NDA]," the question then becomes: Did the trial court err in implicitly concluding that a violation of the NDA constituted independently wrongful conduct?

It did.

That is because "[c]onduct amounting to a breach of contract becomes tortious only when it also violates an independent duty arising from principles of tort law." (*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 515; *Erlich*, *supra*, 21 Cal.4th at p. 551; *Aas v. Superior Court* (2000) 24 Cal.4th 627, 643, superseded on other grounds by Civ. Code, §§ 895-945.5.) Because a bare breach of contract, without more, is not tortious, such a breach cannot constitute

12

independently wrongful conduct capable of giving rise to the tort of intentional interference with a prospective economic advantage. (*Cates*, *supra*, 21 Cal.4th at p. 54 ["'[a] contracting party's unjustified failure or refusal to perform is a breach of contract, and cannot be transmuted into tort liability by claiming that the breach detrimentally affected the promisee's business'"]; *Artnz*, *supra*, 47 Cal.App.4th at pp. 478-479 [dismissing claim for intentional interference with a prospective economic advantage premised on defendant's breach of a contract with the plaintiff]; *JRS Products*, *supra*, 115 Cal.App.4th at p. 183 [same]; *Deerpoint Group, Inc. v. Agrigenix, LLC* (E.D.Cal. 2018) 345 F.Supp.3d 1207, 1235 ["Under California law, a breach of contract cannot constitute the 'wrongful' conduct required for the tort of interference with prospective economic advantage"].)

For these reasons, we conclude that, by sending the case to the jury, the trial court erred in implicitly ruling that Real Soda and Ginsburg's breach of the NDA qualified as an independently wrongful act.

## II. Is the Error Cognizable In This Appeal?

Due to the trial court's error, Real Soda and Ginsburg have been found liable based on conduct that is not independently wrongful—and, as a consequence, not tortious. May this verdict stand because Real Soda and Ginsburg did not bring this error to the court's attention until *after* trial?

It must not stand, for two interlocking reasons.

The first reason is that a trial court lacks subject matter jurisdiction to enter judgment for conduct that our Supreme Court has determined does not amount to a tort.

"Subject matter jurisdiction . . . is the power of the court over *a cause of action* or to act in a particular way." (*Greener v.*

13

*Workers Comp. Appeals Bd.* (1993) 6 Cal.4th 1028, 1035, italics added; *Karlsson v. Ford Motor Co.* (2006) 140 Cal.App.4th 1202, 1236 ["Subject matter jurisdiction concerns the authority of the court to try *a certain type of action . . .*"], italics added; *Quigley v. Garden Valley Fire Protection Dist.* (2019) 7 Cal.5th 798, 807 ["A lack of fundamental jurisdiction is the """"entire absence of power to hear or determine *the case*""""], italics added; cf. *People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 660 ["Lack of [subject matter] jurisdiction . . . means an entire . . . absence of authority over the subject matter"].)

Causes of action—and the subject matter jurisdiction that trial courts possess to entertain them—can arise (1) from statutes enacted by legislative bodies (such as our Legislature or Congress), except where that authority has been curtailed by the Supremacy Clauses of the federal or California Constitutions (e.g., *De Tomaso v. Pan American World Airways, Inc.* (1987) 43 Cal.3d 517, 520, fn. 1 ["[w]hether or not tort claims are preempted by [federal Railway Labor Act] is a question of subject matter jurisdiction"]; *El Rancho Unified School Dist. v. National Education Assn.* (1983) 33 Cal.3d 946, 961 [federal statute divests trial courts of subject matter jurisdiction over lawsuit for damages]) or (2) from judges exercising their inherent, common law authority to fashion remedies, except where that authority has been curtailed by statutory or constitutional law (*Olcese v. Justice's Court* (1909) 156 Cal. 82, 85 [trial courts are the "courts with the fullest common law and equity jurisdiction"]; *Dale v. Dale* (1998) 66 Cal.App.4th 1172, 1177-1178 ["The superior court has subject matter jurisdiction over a tort action . . ."]; *Cory v. Shierloh* (1981) 29 Cal.3d 430, 439 ["the Legislature possesses a broad authority both to establish and to abolish tort causes of

14

action"], superseded on other grounds by Bus. & Prof. Code, § 25602.1.)

Where a party purports to bring a statute-based cause of action that does not satisfy its statutory prerequisites, a trial court lacks subject matter jurisdiction. This is true for civil causes of action. (E.g., *Weitzman*, *supra*, 107 Cal.App.4th at pp. 545-546 [statute allows litigant to bring qui tam suit for public disclosure of information, but only if he was not original source of that information; failure to satisfy this requirement means no subject matter jurisdiction]; *Dollenmayer*, *supra*, 150 Cal. at p. 5 [statute allows action only if there is a "lawful order of reference"; failure to satisfy this requirement means no subject matter jurisdiction]; *Vaughn v. Condon* (1921) 52 Cal.App. 713, 715-716 [statute allows for garnishment, but not by public corporations; failure to satisfy this requirement means no subject matter jurisdiction]; cf. *In re Estate of Keet* (1940) 15 Cal.2d 328, 336 [trial court's decree is "clearly within its statutory grant of jurisdiction" means subject matter jurisdiction exists].) It is also true for prosecutions for crimes that must, in California, be defined by statute; thus, a trial court lacks subject matter jurisdiction to accept a plea for conduct that does not fall within any statutorily defined crime. (E.g., *Vasilyan*, *supra*, 174 Cal.App.4th at pp. 448-450 [a trial court "lack[s] subject matter jurisdiction" over a "conviction and sentence imposed for a crime that does not exist"]; *People v. Wallace* (2003) 109 Cal.App.4th 1699, 1704 [same].)[4]

_____

[4] The courts are currently split over whether a trial court categorically lacks subject matter jurisdiction where the statutory prerequisite that goes unmet is the requirement of exhaustion of claims or the presentation of claims to a public

By this same logic, a trial court also lacks subject matter jurisdiction where a party purports to bring a common law-based cause of action that does not satisfy its judicially articulated prerequisites.

Even though the tort of intentional interference with a prospective economic advantage is a common law creation, our Supreme Court has definitively ruled that a plaintiff does not have a valid claim for this tort where the sole interference alleged is a breach of contract. Put differently, where the plaintiff's sole theory supporting the special verdict and the judgment is that the defendant's conduct was wrongful because the defendant breached a contract, there is no tort. Because there is no tort, the trial court in this case lacked subject matter jurisdiction.

The parties resist this conclusion, noting the longstanding principle that a court's subject matter jurisdiction does not turn on the "sufficiency or insufficiency of [the] pleadings," at least where the "pleadings state a case belonging to a general class over which the authority of the court extends." (*In re Application of Sargen* (1933) 135 Cal.App. 402, 408-409; *City of Santa Paula*

_____

agency. (Compare *Redlands High School Dist. v. Superior Court* (1942) 20 Cal.2d 348, 360 [failure to satisfy claims presentation requirement does not deprive trial court of subject matter jurisdiction]; *State of California v. Superior Court* (2004) 32 Cal.4th 1234, 1239-1240 & fn. 7 [same]; *Keiffer v. Bechtel Corp.* (1998) 65 Cal.App.4th 893, 900 [failure to exhaust administrative remedies "does not concern . . . subject matter jurisdiction"]; *Mission Housing Development Co. v. City & County of San Francisco* (1997) 59 Cal.App.4th 55, 66-68 [same] with *Saffer*, *supra*, 225 Cal.App.4th at pp. 1252-1253 [failure to exhaust administrative remedies required by a federal statute "implicates a question of subject matter jurisdiction"].) However, this split is not implicated here.

16

*v. Narula* (2003) 114 Cal.App.4th 485, 491 ["an error in the labeling of the pleading did not deprive the court of jurisdiction"].) This principle is of no help here for two reasons. To begin, the operative pleading in this case—that is, Drink Tank's complaint—*was* "sufficient" to invoke the court's subject matter jurisdiction because it alleged independently wrongful conduct *beyond* the bare breach of the NDA. Further, and more to the point, it was Drink Tank's decision to narrow its lawsuit and to obtain a special verdict based solely on the bare breach of the NDA that yielded a judgment for conduct that is not a tort as defined by our Supreme Court and hence outside the trial court's subject matter jurisdiction.

The second reason is that a trial court's lack of subject matter jurisdiction generally cannot be forfeited, waived, or the subject of invited error or estoppel. (*Schlyen v. Schlyen* (1954) 43 Cal.2d 361, 375-376 [subject matter jurisdiction "'may not be conferred by consent, waiver, agreement, acquiescence or estoppel'"]; *People v. Tindall* (2000) 24 Cal.4th 767, 776, fn. 6 [same].) Because a judgment issued by a court lacking subject matter jurisdiction is void (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 196), the possible nonexistence of such jurisdiction may be raised "'whenever that issue comes to the court's attention,'" including for the first time on appeal (*Totten v. Hill* (2007) 154 Cal.App.4th 40, 46; *People v. Lara* (2010) 48 Cal.4th 216, 225).[5]

---

[5] The exception providing that parties may lose the right to object to a trial court's common law-based subject matter jurisdiction by not invoking a statute that operates to displace that jurisdiction (*Doney v. Tambouratgis* (1979) 23 Cal.3d 91, 98-99; *Popejoy v. Hannon* (1951) 37 Cal.2d 159, 173, superseded by

17

Drink Tank responds with what boils down to three arguments.

First, Drink Tank invites us to view the issue here as an error with the jury instructions or the special verdict form, and notes that such errors may be forfeited, waived, or found to be invited error or the subject of estoppel. To be sure, unlike a trial court in a criminal case that has "the ultimate responsibility for properly instructing the jury" (*People v. Wickersham* (1981) 32 Cal.3d 307, 335, overruled on other grounds in *People v. Barton* (1995) 12 Cal.4th 186), a trial court in a civil case has "'no duty to instruct on its own motion'" (*Agarwal v. Johnson* (1979) 25 Cal.3d 932, 950-951, disapproved on other grounds in *White v. Ultramar, Inc.* (1999) 21 Cal.4th 563) and no duty to revise incorrect instructions (*Truman v. Thomas* (1980) 27 Cal.3d 285, 301). Consequently, errors in the jury instructions can be forfeited by a party's failure to object, can be the subject of waiver or estoppel due to a party's acquiescence, and can be deemed invited error if that acquiescence was tactical. (*Saxena v. Goffney* (2008) 159 Cal.App.4th 316, 328-329; *Mesecher v. County of San Diego* (1992) 9 Cal.App.4th 1677, 1685-1686; *Elisalda v. Welch's Sand & Gravel Co.* (1968) 260 Cal.App.2d 46, 51-52.) And although it is the plaintiff who bears the burden of submitting a special verdict form that obtains a finding on each of the questions essential to liability (*Behr v. Redmond* (2011) 193 Cal.App.4th 517, 531-532

statute on other grounds as stated in *Marsh v. Tilley Steel Co.* (1980) 486, 496) certainly exists, but it has no applicability here, where the limitation on subject matter jurisdiction derives from our Supreme Court's binding delineation of the boundaries of a tort that must be satisfied as an element of the plaintiff's case (*Della Penna, supra,* 11 Cal.4th at p. 378) rather than an optional, statute-based affirmative defense.

18

(*Behr*)), errors in a special verdict form are not cognizable on appeal if they were invited by the defendant (*Saxena*, at pp. 328-329). But neither the jury instructions nor the special verdict form in this case were erroneous: The trial court instructed the jury to make every factual finding entrusted to it, and the special verdict form tracked those instructions. As noted above, the error here was with the *trial court*'s erroneous finding—on a question of law entrusted to it—that Real Soda and Ginsburg's alleged breach of contract was independently "wrongful" and it was *this* erroneous legal finding that led to a verdict being entered on conduct that does not constitute a tort *at all* and thus led to a judgment entered when the court lacked subject matter jurisdiction.

Second, Drink Tank suggests that Real Soda and Ginsburg used the wrong procedural vehicle—namely, a motion for JNOV rather than a motion for new trial—to raise their objection to the verdict. This argument is beside the point. Real Soda and Ginsburg appealed *both* the order denying the JNOV motion *and* the judgment itself. Those are separately appealable. (*Sweatman v. Department of Veterans Affairs* (2001) 25 Cal.4th 62, 68 ["The moving party may appeal from the judgment or from the order denying the motion for judgment notwithstanding the verdict, or both"]; Code Civ. Proc., § 904.1, subds. (a)(1) & (a)(4) ["judgment" and "order . . . denying a motion for judgment notwithstanding the verdict" each subject to appeal].) Regardless of any limits on the scope of the JNOV motion, we may certainly consider a challenge to the trial court's subject matter jurisdiction on appeal from the judgment.

Lastly, Drink Tank argues that its complaint properly alleged a claim for intentional interference with a prospective

19

economic advantage. This is correct, as the complaint alleged two categories of "wrongful conduct"—namely, (1) the alleged breach of the NDA, and (2) other, unspecified "tortious[] interference." But it is also irrelevant because Drink Tank subsequently narrowed its claim at trial to the legally invalid breach-of-contract theory.[6]

For these reasons, we conclude that the absence of subject matter jurisdiction is cognizable in this appeal.

## III. What Is the Proper Remedy?

### A. *As to the judgment*

Using a special verdict (rather than a general verdict) can be risky. On the front end, the plaintiff must be excruciatingly careful to make sure that the special verdict form contains every finding necessary to sustain a cause of action (*Pinto v. Farmers Ins. Exchange* (2021) 61 Cal.App.5th 676, 693; *Myers Building Industries, Ltd. v. Interface Technology, Inc.* (1993) 13 Cal.App.4th 949, 959-960 (*Myers Building*)) because any missing elements preclude a judgment in the plaintiff's favor. The risk of error falls solely on the plaintiff because it is the plaintiff, as the party with the burden of proof, who has the "responsibility for submitting a verdict form sufficient to support her causes of action." (*Behr, supra*, 193 Cal.App.4th at p. 531.) On the back end, the plaintiff is limited to the express findings made by the jury in the special verdict form and, unlike with a general verdict, courts cannot imply findings to support a special verdict. (*Trujillo v. North County Transit Dist.* (1998) 63 Cal.App.4th 280,

---

6      This is also why Drink Tank's request, at oral argument, for leave to amend its complaint is misplaced; the defect is not with the operative complaint but with how Drink Tank subsequently chose to narrow it.

285; *Singh v. Southland Stone, U.S.A., Inc.* (2010) 186 Cal.App.4th 338, 358.)  If an essential finding is missing, its "absence . . . precludes judgment for the plaintiff on that claim." (*Behr*, at p. 531.)

So what is the proper remedy when a trial court lacks subject matter jurisdiction because the only remaining claim is based solely on a theory that renders the defendants' conduct nontortious, and the special verdict form submitted to the jury is limited to findings pertaining to that invalid theory?

It is reversal with instructions to dismiss the plaintiff's case.

Although Drink Tank initially alleged other claims and, as to the intentional interference with a prospective economic advantage claim, initially alleged other theories of wrongful conduct aside from Real Soda and Ginsburg's breach of the NDA, Drink Tank voluntarily dismissed its other claims and, in its special verdict form, voluntarily narrowed its intentional interference claim to a theory of wrongful conduct based on a breach of the NDA.  Drink Tank is stuck with these choices, and these choices lead ineluctably to the conclusion that dismissal of its action is the necessary remedy.

Drink Tank points us to evidence from the trial that it argues demonstrates Ginsburg disparaged Drink Tank to Tchan, misused Drink Tank's confidential and proprietary information, misappropriated trade secrets, breached Drink Tank's "confidence," and otherwise engaged in unfair business practices in violation of California's unfair competition law (Bus. & Prof. Code, § 17200).  To be sure, this conduct might in theory be sufficient to elevate Real Soda and Ginsburg's breach of the NDA into a *tortious* breach of contract, which exists outside the bad

21

faith insurance context when "'(1) the breach is accompanied by a traditional common law tort, such as fraud or conversion,'" "'(2) the means used to breach the contract are tortious, involving deceit or undue coercion,'" or "'(3) one party intentionally breaches the contract intending or knowing that such a breach will cause severe, unimaginable harm in the form of mental anguish, personal hardship, or substantial consequential damages.'" (*Erlich*, *supra*, 21 Cal.4th at pp. 553-554.)  But Drink Tank's use of the special verdict form precludes us from inferring that the jury's finding of wrongful conduct was based on any of these other, possibly valid theories.

> **B.** ***As to the attorney fees award***

Does our conclusion that the judgment in Drink Tank's favor must be reversed and that Drink Tank's sole remaining claim dismissed mandate that the award of attorney fees in its favor also be vacated?

It does.

Although California follows the American rule that requires parties to bear their own attorney fees, parties may alter that rule by contract to allow for the award of attorney fees to the party who prevails in litigation between them.  (Code Civ. Proc., § 1021; *Miske v. Coxeter* (2012) 204 Cal.App.4th 1249, 1259 [section 1021 "allows the parties to agree that the prevailing party in litigation may recover attorney fees"]; Civ. Code, § 1717, subd. (a) [authorizing an award of attorney fees "to the prevailing party" "[i]n any action on a contract" if "the contract specifically provides" for attorney fees].)

The trial court's award of attorney fees in this case was based upon the remedies clause in the NDA, which entitles the "Discloser" to "reasonable attorney's fees" "[i]n the event a

dispute arises under this Agreement" "in addition to all other remedies available to the Discloser . . . at law or otherwise." Although this clause does not expressly limit the award of attorney fees to the prevailing party, we must imply that limitation:  It is required by the pertinent statutes (Code Civ. Proc., § 1021; Civ. Code, § 1717); it is implied by the clause itself, which provides for attorney fees "*in addition to all other remedies available*," and there are no remedies available to the party that does not prevail; and it is necessary to avoid giving the clause the absurd instruction that would entitle the "Discloser" to attorney fees in all situations, including if it brought an utterly frivolous lawsuit (*Morris v. Reclamation Dist. No. 108* (1941) 17 Cal.2d 43, 51).

Because, in light of our rulings, Drink Tank did not prevail in its lawsuit against Real Soda and Ginsburg, Drink Tank is not entitled to any attorney fees and the trial court's order awarding fees must be vacated.

*    *    *

Given our disposition, we need not reach the remaining arguments challenging the validity of the verdict.

23

## DISPOSITION

The judgment is reversed, the order granting attorney fees is vacated, and the trial court is ordered to dismiss plaintiff's complaint in its entirety.  Each party is to bear its own costs on appeal.

**CERTIFIED FOR PUBLICATION**.


_____, J.
HOFFSTADT


We concur:


_____, P. J.
LUI


_____, J.
ASHMANN-GERST